**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| RYAN SAMSEL,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA<br><br>Defendant. | No. 3:26-cv-530 (DJN) |

**MEMORANDUM OF LAW IN SUPPORT OF THE UNITED STATES OF AMERICA'S MOTION TO DISMISS AND TO TRANSFER**


TODD W. BLANCHE
Attorney General

THEOPHANI K. STAMOS
First Assistant United States Attorney

DENNIS C. BARGHAAN, JR.
MATTHEW J. MEZGER
Assistant United States Attorneys
Office of the United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Ave.
Alexandria, VA 22314
Tel: (703) 299-3891/3741
Fax: (703) 299-3982
Email: dennis.barghaan@usdoj.gov
matthew.mezger@usdoj.gov

*Counsel for United States of America*

## INTRODUCTION

Invoking the Federal Tort Claims Act, Plaintiff Ryan Samsel brings a variety of claims against the United States in connection with his underlying prosecution for events that occurred on January 6, 2021 and his pretrial detention. The majority of the claims in his Complaint must be dismissed on jurisdictional or pleading grounds.

Start with the claims keyed to the actions related to the criminal prosecution. Plaintiff's malicious prosecution claim fails because Congress specifically retained the United States' sovereign immunity for certain intentional torts – including malicious prosecution – premised upon the acts of criminal prosecutors. Moreover, Plaintiff has not stated a plausible claim as there was probable cause to support the prosecution, and the prosecution was not resolved in his favor, even though he later received a Presidential Pardon for the convicted offenses. Plaintiff's abuse of process, false imprisonment, and intentional infliction of emotional distress claims also must be dismissed for lack of jurisdiction.

As to the claims regarding Plaintiff's pretrial detention across multiple federal and non-federal prisons in the District of Columbia, Virginia, Pennsylvania, and New York, many of these should also be dismissed. At the outset, Plaintiff tries to hold the United States liable for the actions of non-federal personnel. The FTCA does not permit this, and thus any claim involving the personnel employed by non-federal prisons must be dismissed. Similarly, any act or omission pre-dating November 24, 2023 is barred under the FTCA's statute of limitations. Furthermore, Plaintiff's efforts to hold the United States liable for the United States Marshal Service's selection or supervision of non-federal facilities where Plaintiff was housed cannot proceed. Such claims are barred by the FTCA's discretionary function exception. Turning to Plaintiff's intentional infliction of emotional distress claims arising from the alleged conditions of confinement of the facilities, these too must also be dismissed for failure to state a claim under applicable state law.

Following dismissal of the above-referenced claims for lack of jurisdiction or failure to state a claim, the only claim that may remain is Plaintiff's assault and battery claim at prisons located in Pennsylvania or New York to the extent the allegations are with respect to federal personnel. To the extent that Plaintiff has plausibly stated claims for assault and battery against federal employees, the Court should transfer those claims to one of the judicial districts of the facilities where the alleged conduct occurred. Such a transfer serves to convenience the parties, witnesses, and the interests of justice—especially considering that they will be governed by the laws of those states.

For these reasons, and those below, the United States respectfully requests that its motion be granted.

## BACKGROUND

### I. FACTUAL BACKGROUND[1]

Plaintiff Ryan Samsel is a resident of the Commonwealth of Pennsylvania. Compl. ¶8. He asserts state tort claims against the United States of America under the Federal Tort Claims Act arising from the following: (1) his indictment and conviction on criminal charges stemming from his acts at the United States Capitol; and (2) his pretrial detention on those same charges in a number of different facilities, primarily those operated either by the District of Columbia or regional consortiums of Virginia counties and cities. Each will be discussed here in turn.

#### A. Indictment and Conviction

Plaintiff was present on the United States Capitol grounds on January 6, 2021, and based on allegations that he had engaged in violent conduct at that time, was arrested on various criminal

[1]Unless otherwise stated, and consistent with the standard governing adjudication of motions to dismiss pursuant to Federal Rule 12(b)(6), *see Burnette v. Fahey*, 687 F.3d 171, 180 (4th Cir. 2012), all factual statements contained within this section are derived from the non-conclusory factual allegations found in Plaintiff's Complaint. The inclusion of such factual allegations here should not be construed as the United States's concession that such allegations are true.

charges on January 30, 2021. *Id.* ¶¶28-29. A federal grand jury sitting in the District of Columbia subsequently returned an indictment against Plaintiff, charging him with several felony offenses – including, *inter alia*, assault on a federal officer, *see* 18 U.S.C. § 111(a)(1), and physical violence on Capitol Grounds, *see* 40 U.S.C. § 5104 – based on his conduct on January 6, 2021. *Id.*; *see also United States v. Samsel*, No. 1:21cr537 (D.D.C.) (Dkt. No. 46).[2]

On February 2, 2024, after a bench trial,[3] the United States District Court for the District of Columbia found Plaintiff guilty on eight criminal counts: two counts of civil disorder, *see* 18 U.S.C. § 231(a)(3); one count of assault on a federal officer that inflicted bodily injury and/or used a deadly/dangerous weapon, *see id.* §§ 111(a)(1); (b); one count of disorderly conduct on the Capitol Grounds, *see* 40 U.S.C. § 5104(e)(2)(D); one count of physical violence on the Capitol Grounds, *see id.* § 5104(e)(2)(F); one count of obstruction of an official proceeding, *see* 18 U.S.C. 1512(c)(2); and two additional counts of assault on a United States Capitol Police ("USCP") Officer and Metropolitan Police Officer, *see id.* §§ 111(a)(1) & (b). *See Samsel*, No. 1:21cr537 (D.D.C.) (Dkt. No. 337). The Court's verdict was subsequently augmented by detailed findings of fact and conclusions of law, which provided, in part, that after gathering on the Capitol Grounds on January 6, 2021, Plaintiff and one of his co-defendants "pushed [a] bicycle rack into" a United States Capitol Police Officer, and then "lifted the bicycle rack off the ground and struck [the USCP Officer] in the face with it, hitting her left cheek," and "knock[ing] her back towards [] stairs." *Id.* (Dkt. No. 345, at 9). The USCP officer "struck her head twice: first, on the handrail of the stairs and, second, when she fell to the ground and the back of her skull hit the steps." *Id.*

Before the District Court sentenced Plaintiff, President Trump – after his inauguration on the

[2]It is well-settled that this Court may take judicial notice of materials contained on court dockets in adjudicating a motion to dismiss pursuant to Federal Rule 12(b)(6). *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004).

[3]Plaintiff's Complaint erroneously alleges that his was a "jury trial." Compl. ¶82.

afternoon of January 20, 2026 – issued him (and the other individuals convicted of offenses related to the events at the United States Capitol on January 6, 2021) a pardon. Compl. ¶89. Plaintiff was released from custody the next day, January 21, 2026.[4] *Id.* ¶90.

### B. Pretrial Detention

After his initial arrest in Pennsylvania, Plaintiff was held at the Federal Detention Center-Philadelphia, which is operated by the Federal Bureau of Prisons. Compl. ¶33; *see also Samsel*, No. 1:21cr537 (Dkt. No. 14).

**1.** Plaintiff was then transferred to the District of Columbia Jail ("D.C. Jail"), which is operated by the District of Columbia government. Compl. ¶¶33, 35; *see also Dep't of Corrections*, *available at* https://doc.dc.gov/page/correctional-facilities (visited Sept. 8, 2026). Plaintiff alleges that D.C. Jail staff, including a D.C. Jail Correctional Officer named "Corporal Hayes," falsely labeled him a "Proud Boy" after his arrival at the facility. Compl. ¶36. Subsequently, Plaintiff maintains that a group of D.C. Jail "guards" "led by Corporal Hayes" "brutally assaulted him" in a portion of the jail without cameras. *Id.* ¶37. Plaintiff was taken to Howard University Hospital in the District of Columbia for treatment. *Id.* ¶38.

**2.** Plaintiff was then transferred to the Rappahannock Regional Jail ("RRJ"), located in Stafford, Virginia, and operated by a consortium of the Counties of King George, Spotsylvania, and Stafford, and the City of Fredericksburg. *Id.* ¶40; *see Jail Authority Bd.*, *available at* https://rrj.state.va.us/jail-authority-board (visited Sept. 8, 2026). While detained there, Plaintiff avers that "RRJ correctional and medical officials denied [him] adequate medical care for his serious pre-existing vascular conditions and for the new injuries sustained in the D.C. Jail assault." Compl. ¶42.[5]

---

[4]Plaintiff alleges that he was not released from custody on the evening of January 20, 2026, because an Assistant United States Attorney incorrectly asserted that plaintiff had an outstanding arrest warrant in another jurisdiction. Compl. ¶89.

[5]At around this time, Plaintiff sought an order from the District of Columbia court releasing him

**3.** Although unclear from the face of Plaintiff's Complaint, at some point he was transferred from RRJ to the Central Virginia Regional Jail ("CVRJ"), located in Orange, Virginia, and operated by a consortium of the Counties of Fluvanna, Greene, Louisa, Madison, and Orange. *Id.* ¶49; *see also About Us*, *available at* https://www.cvrj.org/about (visited Sept. 8, 2026). Plaintiff maintains that "CVRJ personnel falsely classified [him] as a 'sex offender.'" Compl. ¶52. On September 15, 2021, "a team of CVRJ correctional officers [] entered [Plaintiff's] unit," proceeded to "shackle[ him] from behind while an extremely heavy-set guard sat on his back with a shield," after which "his head was slammed to the ground and then he was dropped on a set of steps." *Id.* ¶55. Plaintiff also alleges that CVRJ officials placed him solitary confinement and did not provide follow-up medical care for his pre-existing medical conditions or his assault-related injuries. *Id.* ¶62.

**4.** Plaintiff was then transferred to Northern Neck Regional Jail ("NNRJ"), located in Warsaw, Virginia, and operated by a consortium of the Counties of Northumberland, Richmond, Westmoreland, and Gloucester, and the Town of Warsaw. *Id.* ¶62; *see also Jail Board*, *available at* https://www.nnrj.state.va.us/about/jail-board/ (visited Sept. 8, 2026). On October 12, 2021, "a group of correctional officers led by Captain English, a supervisory correctional officer at NNRJ, took [Plaintiff] to an area with no cameras, and viciously assaulted him." Compl. ¶65. And when Plaintiff reported this assault, "NNRJ officers retaliated against [him]" by "strapp[ing him] into a restraint chair for approximately seventeen hours." *Id.* ¶71.

**5.** Plaintiff was then transferred to three federal facilities operated by the BOP: FDC-Philadelphia; USP-Lewisburg; and Metropolitan Detention Center ("MDC")-Brooklyn. *Id.* ¶¶74, 80;

---

from pre-trial detention to home confinement. Compl. ¶45. Per Plaintiff, based on the assigned Assistant United States Attorney's advocacy, *id.* ¶¶46-48, the court denied the motion in an order ultimately affirmed by the District of Columbia Circuit. *See United States v. Samsel*, No. 22-3034, 2022 WL 2903450, at *1 (D.C. Cir. July 22, 2022) (per curiam) ("This alleged conduct and prior criminal history support a sufficiently 'identified and articulable threat' to the community to permit pretrial detention.").

84. Plaintiff does not allege that he was assaulted by any correctional officers at any of these federal facilities. But he alleges that at FDC-Philadelphia and USP-Lewisburg, he was kept in solitary confinement, and at FDC-Philadelphia, "denied basic hygiene, exercise, and religious materials." *Id.* ¶¶77-81. At MDC-Brooklyn, Plaintiff alleges he was "stabb[ed in] his arm" by a fellow inmate, which he "self-stitch[ed]" because he did not want to report it, and was also placed in solitary confinement. *Id.*

## II. <u>PLAINTIFF'S COMPLAINT</u>

Based on the above allegations, Plaintiff asserts *eight* common law tort causes of action, all against the United States under the FTCA. *Id.* ¶¶91-168.[6]

*First*, Plaintiff presents a claim (Count I) for malicious prosecution premised on his conviction for his actions on January 6, 2026. *Id.* ¶¶91-110. In this respect, Plaintiff challenges the factual findings of the presiding District Judge, *id.* ¶¶96-101, as well as the evidentiary demonstration made by federal prosecutors, *id.* ¶101. Plaintiff maintains that "[p]rosecutors," *inter alia*, "fabricated convictions from [Plaintiff's] history, relied on misdemeanors greater than ten years old, and falsely stated that he had an outstanding warrant." *Id.* ¶102.

Second, Plaintiff presents a claim (Count II) entitled "right to counsel and abuse of process." *Id.* ¶¶111-26. Plaintiff avers that "[t]he major beatings by guards in different facilities, including the D.C. Jail, CVRJ, and NNRJ, and denial of reasonable medical care following those beatings," as well as the placement in solitary confinement "interfered with legal defense preparation." *Id.* ¶119. Plaintiff maintains that although he is clearly proceeding under the FTCA, he is "using the Sixth Amendment, Due Process Clause, and implementing regulations as supporting evidence of the duties and standard

[6] Of note, Plaintiff has not named a single state or municipal entity responsible for operating the jails in which he was allegedly assaulted or denied medical treatment, or a single correctional officer who engaged in the assaultive behavior, as a party defendant to this civil action.

of care that federal employees and agents failed to perform." *Id.* ¶126.

*Third*, Plaintiff presents a claim (Count III) for "negligence and medical malpractice." *Id.* ¶¶127-36. Plaintiff alleges that "[t]he prosecution was fully aware . . . of the 'alarming' health circumstance[s] of plaintiff," but nevertheless "failed in their duty of care to supervise their contractors at D.C. Jail, NNRJ, CVRJ, and elsewhere." *Id.* ¶133.

*Fourth*, Plaintiff presents a claim (Count IV) for "assault and battery." *Id.* ¶¶137-49. This claim is premised upon the alleged assaultive behavior "on March 21, 2021, at the D.C. Jail led by Corporal Hayes, the September 15, 2021 cell extraction at CVRJ, the October 2021 assault at NNRJ carried out by Officer English and his officers and the November 2021 use of the restraint chair [by NNRJ officers]," *id.* ¶148, "[f]ederal law enforcement officers *and their agents* subjected plaintiff to repeated acts of assault and battery," *id.* ¶142 (emphasis added).

*Fifth*, Plaintiff presents a claim (Count V) for "pattern or practice [] and/or civil conspiracy." *Id.* ¶¶150-55. Plaintiff alleges on this score that "[d]efendants' [sic] conduct . . . represents not a single isolated, accidental or peculiar event, but occurs regularly under the direction and/or control of USMS officers and prosecutors." *Id.* ¶151.

*Sixth*, Plaintiff presents a claim (Count VI) for intentional infliction of emotional distress. *Id.* ¶¶156-58. Plaintiff maintains here that the aforementioned alleged acts "constituted behavior so outrageous in character and so extreme in degree, that it shows [six] to be malicious, willful, and intentional." *Id.* ¶157.

*Seventh*, Plaintiff presents a claim (Count VII) for false imprisonment. *Id.* ¶¶159-62. Plaintiff exclusively premises this claim upon what he contends was the one extra day that he spent in custody because "a prosecutor falsely claimed that plaintiff had a warrant outstanding that would prevent his release." *Id.* ¶161.

*Finally*, Plaintiff presents a claim (Count VIII)[7] for "negligent supervision, training, and retention." *Id.* ¶¶163-68. Plaintiff generically alleges here that federal officials did not "properly train, supervise, and discipline identified employees and agents." *Id.* ¶166.

Plaintiff seeks, *inter alia*, $17,980,000.00 in compensatory damages. *Id.* p.36.

## STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a court's jurisdiction over the subject matter of the suit. The motion may either attack the court's subject matter jurisdiction by asserting "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based," or may assert that as a factual matter, the plaintiff cannot meet his burden of establishing a jurisdictional basis for this suit. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Under the latter approach, this Court "may consider evidence outside the pleadings" to determine whether subject matter jurisdiction exists. *In re KBR, Inc.*, 744 F.3d 326, 333 (4th Cir. 2014) (quoting *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004)). Moreover, "[i]t is to be presumed that a cause lies outside" a federal court's limited jurisdiction, and the "burden of establishing the contrary rests upon" the plaintiff. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

A complaint is subject to dismissal if it fails to allege facts that state a plausible claim for relief rising "above the speculative level." Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678. Legal conclusions, "naked assertions devoid of further factual enhancement," and "a formulaic recitation of the elements of a cause of action" are legally insufficient to state a plausible claim. *Id.*; *Twombly*, 550 U.S. at 555. "[I]n the unique context of the

[7] Plaintiff's Complaint inadvertently labels this as a "second" Claim VII.

FTCA, all elements of a meritorious claim are also jurisdictional," meaning that the failure to state a claim "depriv[es] the court of subject-matter jurisdiction." *Brownback v. King*, 592 U.S. 209, 217 (2021).

## ARGUMENT

### I. PLAINTIFF CANNOT MAINTAIN A CLAIM FOR MALICIOUS PROSECUTION (Count I)

Plaintiff's malicious prosecution claim suffers from two fatal flaws. *First*, the United States has only waived its sovereign immunity for claims of malicious prosecution under the FTCA for the acts of "investigative and law enforcement officers." It is well-established that Assistant United States Attorneys—whose alleged acts are the sole source of Plaintiff's claim—are not "investigate and law enforcement officers." *Second*, Plaintiff's Complaint fails to state a plausible claim for malicious prosecution under District of Columbia law.

#### A. The United States Has Retained Its Sovereign Immunity From Suit For Malicious Prosecution

The "intentional tort proviso" of the FTCA provides as follows:

> The provisions of this chapter and section 1346(b) of this title shall not apply to –
>
> . . .
>
> (h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided, That,* with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

28 U.S.C. § 2680(h) (emphasis added); *see also Medina v. United States*, 259 F.3d 220, 224 (terming § 2680(h) the "intentional tort proviso"). Thus, the United States has only waived its sovereign immunity for claims of malicious prosecution (and abuse of process, *see infra* Part II.A) when the

alleged acts or omissions giving rise to the claim were committed by federal "investigative or law enforcement officers." *See, e.g.*, *Moore v. United States*, 213 F.3d 705, 708 (D.C. Cir. 2000).

Plaintiff exclusively trains his malicious prosecution claim upon the acts of federal prosecutors. Compl. ¶¶95, 102-03, 105-06. But it is well-settled that Assistant United States Attorneys are not "investigative or law enforcement officers" for purposes of § 2680(h). *Yacubian v. United States*, 750 F.3d 100, 108 (1st Cir. 2014); *Moore*, 213 F.3d at 713 n.7; *Bernard v. United States*, 25 F.3d 98, 104 (2d Cir. 1994). This is so because "prosecutors . . . are not empowered to execute searches, seize evidence, or make arrests." *Bonilla v. United States*, 652 F. App'x 885, 890 (11th Cir. 2016); *see also* 28 U.S.C. § 547 (listing the duties of U.S. Attorneys). Accordingly, the Court must dismiss Plaintiff's malicious prosecution claim pursuant for lack of subject matter jurisdiction.

**B. Plaintiff Has Not Pled a Plausible Claim of Malicious Prosecution**

Furthermore, Plaintiff has not pled a plausible malicious prosecution claim under applicable state law. Through the FTCA, Congress provided for a limited waiver of the United States's sovereign immunity for personal-injury claims "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Because Plaintiff's prosecution occurred within the District of Columbia, and the prosecutorial acts that are the subject of that claim similarly were based there, it is District of Columbia common law that governs the instant malicious prosecution claim. *See, e.g.*, *Richards v. United States*, 369 U.S. 1, 9-10 & n.20 (1962); *Flynn v. United States*, 2024 WL 5057537, at *6 (M.D. Fla. Dec. 10, 2024) (applying District law to FTCA malicious prosecution claim where prosecution was in the District).

Under District law, "four elements make up the tort of malicious prosecution: (1) the defendant's initiation or procurement of a criminal proceeding against the plaintiff; (2) absence of

probable cause for the proceeding; (3) malicious intent on the part of the defendant; and (4) termination of the proceeding in favor of the plaintiff." *Moore*, 213 F.3d at 710. Plaintiff's Complaint fails to plead sufficient non-conclusory factual allegations that would render plausible at least two of these elements – the absence of probable cause and the termination of the prosecution in his favor.

**a.** Plaintiff had not pled sufficient facts that the United States lacked probable cause to bring criminal charges against him based on his conduct on January 6, 2021. A prosecutor "need not be certain of the outcome of a proceeding to have reasonable grounds for instituting it." *Ammerman v. Newman*, 384 A.2d 637, 640 (D.C. 1978). The District's Court of Appeals defines probable cause as "the existence of facts and circumstances as will warrant a cautious man in the belief that his action and the means taken in prosecuting it are legally just and proper." *Katz v. District of Columbia*, 285 A.3d 1289, 1311 (D.C. 2022) (internal quotations and citation omitted).

Plaintiff only cursorily avers in conclusory fashion that there was a lack of probable cause. Compl. ¶93 ("Malice and the lack of probable cause are shown through the basic elements of the original complaint."). But this conclusory allegation is in stark contrast to the detailed findings of fact and conclusions of law by the presiding District Judge following Plaintiff's bench trial, *see Samsel*, 1:21cr537 (Dkt. No. 345), which demonstrates there was a "reasonable basis" to bring the criminal prosecution. Nor do Plaintiff's other challenges to his convictions contained within the four corners of his Complaint plausibly allege a lack of probable cause. For instance, Plaintiff alleges that although he "helped the [USCP] officer up," he was the only individual "deemed to use the [bicycle] rack as a weapon and to have caused serious bodily harm." Compl. ¶¶96, 101. Even if this were true – and it is not[8] – the fact that others acted criminally does not vitiate probable cause that *Plaintiff* engaged in the

[8]The District Judge found both Plaintiff and his co-defendant, Steven Randolph, guilty of violating 18 U.S.C. § 111(a)(1) when they "assaulted, resisted, opposed, impeded, and interfered with [the USCP officer]," because "[v]ideo evidence and sworn testimony presented at trial established that *both defendants* lifted a metal bicycle rack off the ground and attacked" the officer. *Samsel*, 1:21cr537 (Dkt.

criminal conduct. Plaintiff also challenges the state of the evidence concerning the extent of the USCP officer's injury, *id.* ¶98. That stray allegation is not sufficient to plausibly allege that federal prosecutors lacked probable cause to prosecute.

**b.** Plaintiff also has not pled sufficient facts to demonstrate that the criminal proceeding was terminated in his favor. *See Morowitz v. Marvel*, 423 A.2d 196, 198 (D.C. 1980). District courts have held that the termination of the criminal proceeding must be "of such a nature as to indicate the innocence of the accused" and "reflect on the merits of the underlying action." *Brown v. Carr*, 503 A.2d 1241, 1245 (D.C. 1986) (citation omitted); *Rauh v. Coyne*, 744 F. Supp. 1186, 1193 (D.D.C. 1990) ("To show a termination in one's favor, the plaintiff must prove that a court passed on the merits of the charge against him in such circumstances as to show plaintiff's innocence"). More pointedly, "[i]t is not enough that the terminations are *consistent* with innocence; they must *tend to show* innocence." *O'Quinn v. District of Columbia*, 1988 WL 23244, at *2 (D.D.C. Mar. 4, 1988) (emphasis in original).

Plaintiff's sole allegation on the "favorable termination" element is that President Trump issued him a pardon. Compl. ¶109 (alleging that plaintiff "received favorable termination in the form of a full pardon"). But the Supreme Court has explained that a pardon "carries an imputation of guilt" and the "acceptance [of a pardon] a confession of it." *Burdick v. United States*, 236 U.S. 79, 94 (1915). The District of Columbia Circuit has also acknowledged that "acceptance of a pardon"—including, as here, a full and unconditional pardon—"may imply a confession of guilt." *United States v. Schaffer*, 240 F.3d 35, 38 (D.C. Cir. 2001); *see also Pres. Proclamation 10,887*, *available at* 2025 WLNR 4043532 (Jan. 20, 2025). This is especially so, *Schaffer* noted, when the pardon "act[ed] on the" pardoned individual's "conviction, without purporting to address [his] innocence or guilt." 240 F.3d at 38.

The Presidential Pardon received by Plaintiff did not at all indicate Plaintiff's innocence and

---

No. 345, at 18 (emphasis added)).

thus it does not satisfy the favorable termination requirement for a malicious prosecution claim. *See Brown*, 503 A.2d at 1245; *see also In re North*, 62 F.3d 1434, 1437 (D.C. Cir. 1994) (holding that "a pardon does not blot out probable cause of guilt"); *Richards v. United States*, 192 F.2d 602, 607 (D.C. Cir. 1951) (concluding that "a pardon does not 'blot out guilt' in any literal or uncritical sense"). None of the language within Plaintiff's pardon indicates any expression with respect to Plaintiff's guilt or innocence of the underlying criminal charges. Plaintiff thus cannot plausibly plead that his criminal proceedings were "favorably terminated" and his malicious prosecution claim must be dismissed.

## II. PLAINTIFF CANNOT MAINTAIN A CLAIM FOR A PUTATIVE INTERFERENCE WITH HIS RIGHT TO COUNSEL (Count II)

Plaintiff's second claim is puzzling. Entitled "Right to Counsel and Abuse of Process," Compl. at p.23, it is exclusively premised on alleged acts or omissions taken by the federal prosecutors assigned to his criminal proceeding, BOP officials, and correctional guards and other officials at the state and local facilities at which Plaintiff was detained that, Plaintiff alleges, interfered with his Sixth Amendment right to participate in his criminal defense. *Id.* ¶¶111-126. But it is well-settled that the FTCA does not provide a waiver of the United States's sovereign immunity with respect to putative constitutional violations. *See, e.g.*, *FDIC v. Meyer*, 510 U.S. 471, 478 (1994); *Williams v. United States*, 242 F.3d 169, 175 (4th Cir. 2001). Nor can Plaintiff bootstrap what he openly alleges to be a constitutional violation into the common law tort of "abuse of process."

### A. This Court Lacks Jurisdiction Over the Claim to the Extent that it is Premised Upon Conduct of Prosecutors

This Court is without jurisdiction to consider this claim to the extent it is premised on the acts or omissions of federal prosecutors for the same rationale applicable to his malicious prosecution claim. As explained above, that FTCA's "intentional tort proviso" retains the United States's sovereign immunity over claims that arise out of certain intentional torts, *including* abuse of process, unless they are based on the acts of an "investigative or law enforcement officer." Because Plaintiff premises this

claim upon the purported acts of federal prosecutors, who are not "investigative or law enforcement officers," it must be dismissed for lack of subject matter jurisdiction in that respect.

### B. Plaintiff Has Not Pled a Plausible Abuse of Process Claim

Leaving aside that Plaintiff's claim is unequivocally pled as an alleged Sixth Amendment violation, which is not cognizable under the FTCA, his allegations also do not create a plausible abuse of process claim under Virginia, Pennsylvania, or District law. The general elements of an abuse of process claim do not largely differ amongst these three jurisdictions:

> To sustain a cause of action for abuse of process, a plaintiff must plead and prove: (1) the existence of an ulterior purpose; and (2) an act in the use of the process not proper in the regular prosecution of the proceedings.

*Donohoe Constr. Co. v. Mount Vernon Assocs.*, 369 S.E.2d 857, 862 (Va. 1988) (citing, *e.g.*, *Mullins v. Sanders*, 54 S.E.2d 116, 121 (Va. 1949)); *see also Wood v. Neuman*, 979 A.2d 64, 76-77 (D.C. 2009) (similar); *Lerner v. Lerner*, 954 A.2d 1229, 1238 (Pa. Super. 2008) (similar). In short, the *sine qua non* of abuse of process is "the misuse of process . . . for any purpose other than that which it was designed to accomplish." *Lerner*, 954 A.2d at 1238 (quoting *Shiner v. Moriarity*, 706 A.2d 1228, 1236 (Pa. Super. 1998)); *Scott v. District of Columbia*, 101 F.3d 748, 755 (D.C. Cir. 1997); *Donohoe Const.*, 369 S.E.2d at 862.

None of Plaintiff's allegations in this regard satisfy these elements of the common law tort. "The 'process' here is" Plaintiff's criminal prosecution, "and the tort is made out only if" that criminal prosecution is "misused" for some other purpose. *Moore*, 213 F.3d at 713. As an example, "where a defendant has criminal warrants issued against plaintiff, then makes a separate offer to have the warrants dismissed in return for payment of an unrelated debt, abuse of process has occurred." *Vodrey v. Golden*, 864 F.2d 28, 31 (4th Cir. 1988). But here, Plaintiff alleges simply that the relevant actors interfered with his efforts to participate in his defense of the "process" *itself*. Because that is not "abuse of process," this Court should dismiss the claim for failure to state a plausible claim.

## III. THE UNITED STATES OF AMERICA IS NOT LIABLE FOR THE ACTIONS OF NON-FEDERAL ACTORS (Counts III, IV)

Plaintiff seeks to hold the United States liable for alleged negligence and assault and battery by personnel at the DC Jail, CVRJ, and NNRJ. Compl. ¶¶128, 147. The principal defect in Plaintiff's claims in this regard is that *none* of those facilities are run by the federal government and operated by federal employees. The DC Jail is operated by the District of Columbia's Department of Corrections. Dep't of Corr., "Central Detention Facility," *supra*, and the CVRJ and NNRJ are operated by various local governments in the Commonwealth of Virginia, Cent. Va. Reg'l Jail, "About Us," *supra*; N. Neck Reg'l Jail, "About NNRJ," *supra*. As these judicially noticeable sources confirm, Plaintiff is thus attempting to hold the United States liable for the alleged conduct of *non-federal* actors. However, the FTCA has not waived the United States's sovereign immunity for the acts or omissions of non-federal employees.

As the Fourth Circuit has made plain, "[t]he FTCA does not create a new cause of action; rather, it permits the United States to be held liable in tort by providing a limited waiver of sovereign immunity "for injury or loss caused by the negligent or wrongful act of a Government employee acting within the scope of his or her employment." *Pornomo v. United States*, 814 F.3d 681, 687 (4th Cir. 2016) (quoting *Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001)). Indeed, the United States' waiver of sovereign immunity could not be clearer on this point when the United States is a defendant: this Court's jurisdiction only extends to injuries and losses "caused by the negligent or wrongful act or omission of any *employee of the Government* while acting withing the scope of his office or employment." 28 U.S.C. § 1346(b)(1) (emphasis added).

The waiver thus makes no provision for suits involving the tortious conduct of non-federal employees or its contractors. *See also Wilson v. Jones*, 902 F. Supp. 673, 676 (E.D. Va. 1995) ("The Act provided that an FTCA action against the United States is the exclusive remedy available to an individual claiming he was injured by the wrongful or negligent actions of a federal employee acting within the scope of his office or employment. (citation omitted)); *Robb v. United States*, 80 F.3d 884,

887 (4th Cir. 1996) ("Congress has not waived the sovereign immunity of the United States for injuries resulting from the actions of independent contractors performing work for the government.").[9] Plaintiff has failed to meet his pleading burden that the United States can be sued for the actions of the employees of the DC Jail, CVRJ, and NNRJ.

Though Plaintiff tries to rely on some alleged "duty of care" regarding the selection of contractors, that is insufficient to rescue his claim. For the reasons argued *infra*, the selection of facilities to hold pretrial detainees is subject to the FTCA's discretionary function exception and Virginia law does not recognize a failure to supervise independent contractors claim. Accordingly, the court should dismiss Plaintiff's claims predicated on the acts of non-federal employees at DC Jail, CVRJ, and NNRJ.

## IV. ALL CLAIMS INVOLVING ACTS OR OMISSIONS PRE-DATING NOVEMBER 24, 2023 ARE BARRED BY THE FTCA'S STATUTE OF LIMITATIONS

Under the FTCA, "[a] tort claim against the United States shall be forever barred unless it is presented [to the agency] within two years after such claim accrues." 28 U.S.C. § 2401(b); *United States v. Wong*, 575 U.S. 402, 410-11 (2015); *Raplee v. United States*, 842 F.3d 328, 332-33 (4th Cir. 2016). Plaintiff's own pleading indicates that he presented his SF-95 (*i.e.*, his tort claims against the United States) on November 24, 2025. Compl. ¶26. Thus, by his own admission, any claim that accrued before November 24, 2023 (*i.e.*, two years before the date he presented his claim) is time-barred. For purposes of this action, this means that any claim predicated on the acts or omissions of the United States concerning his pretrial detention from the date of his arrest through November 2023 is time barred. This accordingly requires dismissal of Plaintiff's claims concerning his treatment in DC Jail from early 2021 through April 2021, (Compl. ¶¶30-40); RRJ from April 2021 through approximately June 2021

[9] *See also Johnson v. United States*, 2006 WL 572312 (E.D. Va. Mar. 7, 2006) (holding that local jail used by USMS to house pretrial detainees is an independent contractor and United States cannot be held liable for the negligence of jail employees pursuant to the FTCA).

(Compl. ¶¶41-46); CVRJ from approximately June 2021 through approximately September 2021 (Compl. ¶¶47-62); NNRJ from approximately September 2021 until approximately October (Compl. ¶¶63-73); and potentially his time at FDC Philadelphia and USP Lewisburg.[10]

## V. THIS COURT LACKS JURISDICTION OVER PLAINTIFF'S FALSE IMPRISONMENT CLAIM (Count VII)

Plaintiff's false imprisonment claim also is barred by the FTCA's intentional torts exception in 28 U.S.C. § 2680(h). Once again, Plaintiff's false imprisonment claim is premised exclusively upon the acts of a single federal prosecutor. Compl. ¶¶161 (alleging that "a prosecutor falsely claimed that plaintiff had a warrant outstanding that would prevent his release"); 162 (alleging that "[a]s a direct and proximate result of this intentional act, plaintiff was unlawfully confined for one day"). Because federal prosecutors are not "investigative or law enforcement officers" within the meaning of the FTCA, the United States has not waived its sovereign immunity for Plaintiff's false imprisonment claim arising from the alleged conduct of a federal prosecutor. Accordingly, this Court should dismiss plaintiff's false imprisonment claim pursuant to Federal Rule 12(b)(1).

## VI. PLAINTIFF HAS NOT PLAUSIBLY STATED A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (Count VI)

In connection with his prosecution and pre-trial detention, Plaintiff brings claims for intention of emotional distress ("IIED") arising from the alleged conduct of the prosecuting AUSAs, USMS, and the BOP correctional officers. These claims should be dismissed.

Start with the claims against the prosecuting AUSAs, which are analyzed under D.C. law. At the outset, this particular IIED claim is barred by the FTCA's intentional tort provision. As argued above, *supra* Parts I.A, V, federal prosecutors are not "investigative or law enforcement officers" within the meaning of the FTCA. But even if there were jurisdiction, the claim must still be dismissed.

[10] The Complaint provides no temporal context for when the alleged mistreatment occurred in FDC Philadelphia and USP Lewisburg. Compl. ¶¶74-81.

Under D.C. law, an IIED claim requires: "(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Minch v. District of Columbia*, 952 A.2d 929, 940 (D.C. 2008) (citation omitted). No IIED claim is stated where, as here, a prosecutor charges a case based on probable cause.[11] *Smith v. United States*, 843 F.3d 509, 515-16 (D.C. Cir. 2016). Even though Plaintiff also claims that the AUSAs pressured him to provide allegedly false testimony, that is not conduct "that rises to the level of 'outrageousness' as to beyond all possible levels of decency and utterly incomprehensible in a civilized society." *Lyles v. Micenko*, 404 F. Supp. 2d 182, 187 (D.D.C. 2005) (holding no viable IIED claims based on false allegations to police that led to felony arrest and time in jail). Accordingly, no IIED claim has been stated against the conduct of the prosecuting AUSAs.

Plaintiff's IIED claims regarding USMS's alleged actions, which are analyzed under D.C., Virginia, and Pennsylvania law, fare no better.[12] Though Plaintiff tries to hold the United States liable for the actions of non-USMS employees, the reality is that Plaintiff's IIED claims are predicated on the USMS's selection of facilities for Plaintiff's pretrial detention. Compl. ¶¶36, 40, 50-51, 63, 74. Indeed, Plaintiff's generic and conclusory allegations that "USMS . . . actions constituted behavior so outrageous," *see id.* ¶157, provide no help in this regard. His claims fail to meet a required pleading element for an IIED that is shared by DC, Virginia, and Pennsylvania law: that the conduct must be so outrageous to reach beyond the bounds of civilized society. *Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998); *Russo v. White*, 400 S.E.2d 160, 162 (Va. 1991); *Hoy v. Angelone*, 720 A.2d 745, 753-54 (Pa.

[11] There was probable cause for Plaintiff's charges as the District Court found him guilty on multiple counts after his bench trial. *See* Verdict Form, *United States v. Samsel*, 1:21cr537, Dkt. 337 (D.D.C. Feb. 2, 2024).

[12] The applicable law turns on where the tortious conduct occurred. In connection with USMS's alleged conduct, it occurred at each transfer to a different facility in either DC, Pennsylvania, or Virginia. *See* Compl. ¶36 (transfer to DC Jail); *id.*¶40 (transfer to RRJ in Virginia); *id.*¶51 (transfer to CVRJ in Virginia); *id.* ¶63 (transfer to RRNJ in Virginia); *id.* ¶74, (transfer to USP Lewisburg in Pennsylvania).

1998). Plaintiff's allegations have not met that standard when Plaintiff has not alleged plausible facts that USMS had any knowledge that the facilities' personnel would harm him or were incapable of meeting Plaintiff's medical needs. If anything, Plaintiff's Complaint shows that USMS transported Plaintiff to a new facility with the goal to improve his condition after a medical incident or assault. That is not outrageous conduct by any means. Accordingly, the IIED claims premised on the actions of the USMS should be dismissed.

Lastly, Plaintiff's IIED claims arising out of any BOP employee's alleged conduct at the Pennsylvania or New York federal facilities should be dismissed. These claims, governed by either Pennsylvania or New York law depending on where the alleged conduct occurred, fail for several reasons.

Pennsylvania claims: The Supreme Court of Pennsylvania has "never expressly recognize[d] a cause of action for intentional inflection of emotional distress." *Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000). Given the rarity of such a claim, it not enough to show that "the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." *Hoy*, 729 A.2d at 54. Moreover, under Pennsylvania law, an IIED claim "require[s] a physical injury." *Oldham v. Pa. State Univ.*, 138 F.4th 731, 758 (3d Cir. 2025); *Simmons v. Pacor, Inc.*, 674 A.2d 232, 238 (Pa. 1996) ("It is the general rule of this Commonwealth that there can be no recovery of damages for injuries resulting from fright or nervous shock or mental or emotional disturbances of distress unless they are accompanied by physical injury or physical impact."). Plaintiff's claim does not meet the physical injury requirement. Though he alleges to suffer from "mental anguish, humiliation, embarrassment, fright," Compl. ¶158, he does not allege facts to link those symptoms to any physical injury that occurred in Pennsylvania as a result of the outrageousness conduct (*i.e.*, the prison conditions). *See, e.g.*, *id.* ¶¶77-81.

Separately, Plaintiff fails to plead sufficiently outrageous conduct under Pennsylvania law as evidenced by the analogous case law. *See e.g.*, *Vasquez v. Wingard*, 847 F. App'x 108, 110 (3d Cir. 2021) (affirming dismissal of IIED claim where prison complained that cellmate sexually assaulted him after complaining about roommate assignment; was not treated properly by prison psychologist; and experienced disparaging remarks form the guards); *Gillmore v. Lamas*, 2021 WL 5882093, at *10 (E.D. Pa. Dec. 10, 2021) (dismissing IIED claim when a correctional officer forced plaintiff to strip in front of another incarcerated person, was alleged to have made sexual gestures and a lewd comment about the plaintiff's genitalia, and plaintiff claimed the incident left him feeling violated and humiliated); *Cook v. Condo*, 2021 WL 5585914, at *8 (M.D. Pa. Nov. 30, 2021) ("A transfer from one housing unit of a prison to another is simply not outrageous enough to state an intentional infliction of emotional distress claim upon which relief may be granted, and the court will accordingly dismiss this claim."); *Heath v. PDP Comm'r*, 2024 WL 2136287, at *1-2, *9 (E.D. Pa. May 10, 2024) (dismissing IIED claim based on unsafe living conditions where prisoner lacked hygiene care for 48 days; kept COVID-19 positive cellmate in cell; quarantined him for several days; and did not provide cleaning supplies).

<u>New York Claims</u>: Like Pennsylvania law, New York law requires IIED claim to involve conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Howell v. N.Y. Post Co.*, 612 N.E.2d 699, 702-03 (N.Y. 1993). That standard is especially high because every IIED claim considered by the New York Court of Appeals "has failed because the alleged conduct was not sufficiently outrageous." *Id.* at 702 (collecting cases). Moreover, it is not enough for Plaintiff to aver that defendant "has acted with any intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999); *see also Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) ("The standard for stating a valid claim of intentional infliction

of emotional distress is rigorous, and difficult to satisfy and the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." (cleaned up)).

Plaintiff's allegations fall short to state an IIED claim under New York law. *See, e.g.*, Compl. ¶¶83-87. Plaintiff alleges that MDC Brooklyn personnel assigned him to the "mop closet" to safeguard him from "crowding and threats from inmates." *Id.* ¶84. That fails to plausibly plead the necessary intentional or reckless intent to cause outrageous conduct. *See Friedman v. Self Help Cmt.y Servs., Inc.*, 647 F. App'x 44, 48 (2d Cir. 2016) (dismissing IIED claim where plaintiff claimed that other made false statements to lead to his arrest and involuntary commitment in mental hospital as allegations showed the alleged tortfeasors acting in the best interests of plaintiff). By Plaintiff's own admission, his placement was a result of crowding concerns and threats. His claims about the stabbing and placement in solitary confinement also fail to meet the level of outrageous conduct required under New York law. *See also Sanusi v. Dep't of Homeland Sec.*, 2010 WL 10091023, at *18 (E.D.N.Y. Dec. 1, 2010) (dismissing IIED claim involving detention conditions that included "rotten food, urine-stained sheets, two days of wet bedding, lack of privacy, twenty-three hour confinement in cramped cells, and the discharge of plaintiff's personal belongings").

Plaintiff's IIED claims should be dismissed for lack of jurisdiction and failure to state a claim.

## VII. THERE IS NO JURISDICTION OVER PLAINTIFF's NEGLIGENT SUPERVISION, TRAINING, AND RETENTION CLAIM (Count VIII)

Plaintiff also brings negligent supervision, training, and retention claims as the United States allegedly "owed Plaintiff a duty to adequately train, supervise, and discipline its law enforcement, correction, and medical personnel." Compl. ¶165. Plaintiff's claims are barred by the FTCA's discretionary function exception and is also not cognizable under Virginia law.[13]

[13] The United States analyzes this claim under Virginia law as decisions about the selection of facilities, the adequacy, and the care of USMS prisoners are made in USMS headquarters, which sits

### A. The Discretionary Function Exception Precludes Plaintiff's Challenge to USMS's selection of Facilities to Hold Pretrial Detainees

The FTCA's discretionary function exception precludes this Court's exercise of jurisdiction over claims "based upon the exercise or performance . . . [of] a discretionary function or duty on the part of a federal agency." 28 U.S.C. § 2680. "If the exception applies, a court lacks subject matter jurisdiction over an FTCA claim." *Clement v. Hall*, 2023 WL 3669383, at *2 (E.D. Va. May 24, 2023). The exception "prevent[s] judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Williams v. United States*, 50 F.3d 299, 309 (4th Cir. 1995). It thus protects the government from "liability that would seriously handicap efficient government operations." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984) (citation omitted).

"The exception applies if (1) 'the challenged governmental conduct involves an element of judgment or choice' because no 'statute[,] regulation, or policy prescribes a specific course of action,' and (2) 'the judgment was one that the exception was designed to protect, namely, a judgment based on considerations of public policy.'" Dkt. 35, *Syriani v. United States of America*, 1:26-cv-281, at 10 (E.D. Va. Aug. 18, 2026) (Novak, J.). To meet his burden "of proving that the discretionary function exception does not apply to [the government's conduct]," Plaintiff must show that the challenged conduct fails to satisfy the two-prong framework. *Indem. Ins. Co. of N. Am. v. United States*, 569 F.3d 175, 180 (4th Cir. 2009). Plaintiff cannot meet his burden.

#### 1. Element 1: No Statute, Regulation, or Policy Mandates as Specific Course of Action for USMS's Selection and Monitoring of Facilities

The first prong of the discretionary function test asks whether conduct involves "an element of judgment or choice." *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (citation omitted). A government employee's conduct does not involve discretion when a "federal statute, regulation or

---

in Arlington County, Virginia.

policy specifically prescribes a course of action for the employee to follow" and "the employee has no rightful option but to adhere to the directive." *Id.*

To start, Congress empowered USMS with the discretion to select state and local facilities to house its detainees. Indeed, in 18 U.S.C. § 4002, Congress authorized that the "Attorney General *may* contract, for a period not exceeding three years, with the priority authorities of any State, Territory, or any political subdivision thereof, for the imprisonment, subsistence, care and proper employment of such persons." (emphasis added); *see also* 18 U.S.C. § 4013(b) (authorizing Attorney General to expend funds for contracting with State facilities to care for federal prisoners). Next, USMS's policy does not prescribe a specific course of conduct for which USMS employees have no rightful option but to adhere regarding its selection of the State and local facilities it contracts with for health care for detainees. *See* DEX 1. The contracts between USMS and the facilities at issue in this case make clear that the non-federal facilities are responsible for the provision of secure custody, care and safekeeping of federal prisoners, including medical care and transportation for emergency services outside the facility. DEX 2 (CVRJ); DEX 3 (DC Jail); DEX 4 (NNRJ); DEX 5 (RRJ).

Thus, Plaintiff has not alleged a mandatory federal statute, regulation or established agency policy that prescribed a specific course of conduct for which the USMS had no rightful option to adhere with respect to selection and oversight of contractor facilities to house pre-trial federal detainees. Because the USMS's decisionmaking involved elements of judgment and choice, the first prong of the *Gaubert* test is satisfied.

2. Element 2: Discretionary Decisions About Federal Prisoner Management Are Steeped in Policy Considerations

The Supreme Court has recognized that "if a government employee has discretion under the first [] prong [of the discretionary function framework], it '*must be presumed*' that his acts 'are grounded in policy when exercising that discretion.'" *Bernaldes v. United States*, 81 F.3d 428, 429 (4th Cir. 1996) (emphasis added) (quoting *Gaubert*, 499 U.S. at 324). "Where there is room for policy judgment and

decision, there is discretion." *Dalehite v. United States*, 346 U.S. 15, 36 (1952). As such, the Court must "look to the nature of the challenged decision in an objective, or general sense, and ask whether that decision is one which we would expect inherently to be grounded in considerations of policy." *Baum v. United States*, 986 F.2d 716, 720-21 (4th Cir. 1993).

USMS's decisions to contract with facilities for pretrial detention are susceptible to policy considerations. *See* 18 U.S.C. §§ 4002, 4013; *see also Williams v. United States*, 50 F.3d 299, 309-10 (4th Cir. 1995) (holding that decision to hire independent contractor is "precisely the type of decision that the exception is designed to shield from liability"); *Hodge v. United States*, 443 F. Supp. 2d 795, 799 (E.D. Va. 2006). Courts considering claims about facility selection and management have likewise so held. *See, e.g.*, *Broadnax v. United States*, 2024 WL 4093198, at *8 (S.D. W. Va. Sept. 5, 2024) ("Given the multifaceted nature of maintaining order and security within prisons, the development and implementation of safety protocols in federal prisoners is unquestionably based on considerations of public policy." (citation omitted)); *Bulger v. Hurwitz*, 62 F.4th 127, 144 (4th Cir. 2023) (holding that decisions concerning prisoner placement "implicate policy considerations and claims thereunder are barred by the discretionary function exception"); *Clemmons v. United States*, 2018 WL 6984946, at *6 (D.S.C. Dec. 13, 2018) (recommending dismissal of motion on discretionary function exception because "prisoner administrators are given discretion regarding the provisions of medical care for inmates"), *R&R adopted*, 2019 WL 142274 (D.S.C. Jan. 9, 2019).

Just as USMS's selection to contract with State or local facilities to house federal prisoners is a policy-based, discretionary determination, so too are the considerations about the level of oversight of a contractor. That implicates USMS's policy-based discretionary judgment about personnel and resources allocation, budgetary constraints, and safety considerations, amongst others. *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984) (noting that exception "prevent[s] judicial 'second-guessing' of legislative and administrative decisions grounded

in social, economic, and political policy through the medium of an action in tort" (citation omitted)). The Fourth Circuit has ruled that absent a mandatory and specific established policy, statute, or regulation, that the "government's hiring and supervisory decisions are discretionary functions." *Suter v. United States*, 441 F.3d 306, 312 n.6 (4th Cir. 2006); *see also Lusk v. Merch*, 182 F.4th 311, 323 (4th Cir. 2020). Accordingly, Plaintiff's claims for negligent supervision, training, and retention of its contractors are barred by the discretionary function exception.

### B. Plaintiff Also has Failed to State a Claim for Negligent Supervision, Training, or Retention

Additionally, and independently, Plaintiff fails to state a claim under Virginia law. First, Virginia does not recognize a tort claim for negligent supervision or negligent training. "Federal and Virginia courts have held that Virginia does not recognize negligent supervision as a valid cause of action." *Eley v. Evans*, 476 F. Supp. 2d 531, 535 n.3 (E.D. Va. 2007); *Chesapeake & Potomac Tel. Co. v. Va. v. Dowdy*, 365 S.E.2d 751, 754 (Va. 1988) ("In Virginia, there is no duty of reasonable care imposed upon an employer in the supervision of its employees under these circumstances and we will not create one here."); *A.H. v. Church of God in Christ, Inc.*, 831 S.E.2d 460, 475 (Va. 2019) (similar); *Brown v. Wal-Mart Stores E., LP*, 2023 WL 8357970, at *3 (E.D. Va. Dec. 1, 2023) (collecting cases); *see also Parrish v. Am. Airlines, Inc.*, 97 Va. Cir. 271, 277 (2017) ("Similarly, the Court is not aware of any authority recognizing negligent training in Virginia, and a number of Virginia courts have declined to recognize negligent training in cases in which the cause of action was proposed."); *McDonald v. Betsinger*, No. 7:15-CV-00477, 2016 WL 958737, at *3 (W.D. Va. Mar. 8, 2016) ("As an initial matter, the court declines to recognize a cause of action for negligent training as such cause of action has not been clearly established in Virginia."). Thus, Plaintiff's negligent supervision and training claims must be dismissed.

With respect to Plaintiff's claim for negligent retention, Plaintiff has not alleged sufficient facts to plead a plausible claim. A negligent retention claim requires showing that the employer should know

or should have known that the employee was dangerous. *Se. Apartments Mgmt., Inc. v. Jackman*, 513 S.E.2d 395, 397 (Va. 1999); *Ingelson v. Burlington Med. Supplies, Inc.*, 141 F. Supp. 3d 579, 585-86 (E.D. Va. 2015). Plaintiff's Complaint makes no plausible showing. Plaintiff does not allege that any of the facilities—let alone USMS—had knowledge or should have known that Corporal Hayes (DC Jail), Compl. ¶37; the unnamed officers at CVRJ, *id.* ¶55; and Captain English (NNRJ), *id.* ¶65, had any prior incidents of excessive force with prisoners. Accordingly, Plaintiff's negligent retention claim must be dismissed.[14]

## VIII. NO PATTERN OR PRACTICE CLAIM AND/OR CIVIL CONSPIRACY CLAIM AGAINST UNITED STATES OF AMERICA HAS BEEN STATED (Count V)

Plaintiff brings a pattern or practice claim and civil conspiracy claim against the United States given the alleged repeated constitutional violations made at the control of "USMS officers and prosecutors." Compl. ¶ 151. Both claims fail.

First, Plaintiff's pattern and practice claim. As another Court has recognized pattern and practice claims cannot proceed against the United States under the FTCA. *Smith v. United States*, 2016 WL 3165533, at *10 (S.D. Ill. June 7, 2026). For good reason, as to accept a pattern and practice claim means that the United States of America can be sued for individual instances of constitutional violations. *See supra* part II. As such, and as stated earlier, "a federal constitutional tort cannot provide the source of law under the FTCA." *Williams*, 242 F.3d at 175. Thus, if individual constitutional violations cannot proceed against the United States, it therefore follows that pattern and practice

[14] Should DC law apply to the alleged conduct at DC Jail, the result does not change. Under DC law, claims of negligent supervision, retention, and training are considered the same tort and analyzed together. *Islar v. Whole Foods Market Grp., Inc.*, 217 F. Supp. 3d 261 (D.D.C. 2016) (analyzing negligent supervision and retention as one tort); *Yarullina v. United States*, 770 F. Supp. 3d, 205, 211 (D.D.C. 2025) (analyzing negligent supervision and training as one tort). Like Virginia law for negligent retention claims, DC law similarly requires a plaintiff to plead sufficient allegations that "the employer know or should have known its employee behaved in a dangerous or otherwise incompetent manner." *Yarullina*, 770 F. Supp. 3d at 213 (quoting *Blair v. District of Columbia*, 190 A.3d 212, 299 (D.C. 2018)). Because such allegations are absent here, *see supra*, Plaintiff's claims similarly fail under DC law.

claims cannot either.

Second, Plaintiff's conspiracy claim also fails. To start, Plaintiff's claim inherently stands on tenuous footing as the only constitutional conspiracy claims that case law recognizes involve claims brought under 42 U.S.C. § 1983. *See, e.g.*, *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). And by its plain terms 42 U.S.C. § 1983 does not apply to the United States of America. *District of Columbia v. Carter*, 409 U.S. 418, 424-25 (1973). But even if such a theory were available to Plaintiff, he has not stated a claim. To plead a constitutional conspiracy claim, Plaintiff must show that the federal actors "acted jointly in concert and that some overt act was done in furtherance of the conspiracy." *Hinkle*, 81 F.3d at 421. But Plaintiff's Complaint does not contain any non-conclusory factual allegations to support a plausible conspiracy claim. *See also Hicks v. Mt. Airy-Surry Cnty. Airport Auth.*, 2015 WL 8484453, at *10 (M.D.N.C. Dec. 9, 2015) ("The factual allegations . . . must give rise to an inference that each alleged conspirator shared the same conspiratorial objective." (cleaned up) (quoting *Jones v. Clarke*, 2015 WL 5254938, at *4 (W.D. Va. Sept. 9, 2015))).

What these allegations show is a decision by the prosecutors to inform Plaintiff how he can obtain lesser charges and multiple instances in various detention facilities where Plaintiff was injured. There are no allegations to show that the prosecutorial team acted in concert with USMS personnel to permit Plaintiff to be injured at various locations. That defect only underscores that Plaintiff's claim suffers from yet another pleading defect: it is barred by the intracorporate conspiracy doctrine.

That doctrine "recognizes that a corporation cannot conspire with its agents because the agents' acts are the corporation's own." *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 352-53 (4th Cir. 2013). The entirety of Plaintiff's argument rests on an alleged conspiracy between personnel of USMS and the USAO-DC, both of which are components of the Department of Justice. Accordingly, there is no basis to find that there was a conspiracy with multiple actors. *See id.* at 353 (dismissing allegations were plaintiff alleged that "the three conspirators were also agents of the same two

companies”). Though the doctrine has two exceptions, neither are applicable here. There are no allegations suggesting that any actor who in the alleged conspiracy “possess[ed] a personal stake independent of his relationship to the corporation.” *Id.* (citation omitted). There are also no allegations to suggest that USMS and USAO-DC took actions that “were not authorized by the corporation.” *Id.* (citing *Buschi v. Kirven*, 775 F.2d 1240, 1252 (4th Cir. 1985)). Thus, the intracorporate conspiracy doctrine precludes Plaintiff’s conspiracy claim.

## IX. ANY REMAINING CLAIMS SHOULD BE TRANSFERRED TO ANOTHER DISTRICT

Once all of Plaintiff’s other claims are properly dismissed, if any claims remain against the United States, they are assault and battery claims arising from the alleged conduct of its employees in USP Lewisburg, FDC Philadelphia, and MDC Brooklyn. *See* Compl. ¶142 (generically alleging that “Federal law enforcement officers and their agents subject Plaintiff to repeated acts of assault and battery.”); *id.*¶133 (alleging that acts of negligence occurred at “DC Jail, NNRJ, CVRJ, *and elsewhere*”). This is a generous reading of Plaintiff’s claims in Count IV as he specifically delineates the three alleged circumstances of assault by non-federal employees at DC Jail, CVRJ, and NNRJ. Compl. ¶148. Arguably, there are no assault and battery claims arising out of the time Plaintiff was in custody at USP Lewisburg, FDC Philadelphia, and MDC Brooklyn. Pursuant to 28 U.S.C. § 1404(a), this Court should transfer them to either the United States District Court of the Middle District of Pennsylvania; the Eastern District of Pennsylvania; or the Eastern District of New York as of these courts would serve as a more appropriate judicial forum for those remaining claim. Transfer would further the interest of justice, would convenience the parties, and provides a venue with a more obvious connection to the underlying claims and defenses that would remain in the case.

In assessing whether to exercise its discretion to transfer these claims, this Court must consider: 1) the weight accorded the plaintiff's choice of venue; 2) witness convenience and access; 3) convenience of the parties, and 4) the interest of justice.” *Trs. of the Plumbers & Pipefitters Nat’l Pension*

*Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015). Each factor supports transfer.

**1. Plaintiff's Choice of Venue**. When a plaintiff "selects a forum other than its home forum and the claims bear little or no relation to the chosen forum, the plaintiff's chosen venue is not given substantial weight." *Monarch Networking Sols. LLC v. Juniper Networks, Inc.*, 2023 WL 11717092, at *4 (E.D. Va. Oct. 3, 2023). The deference to a plaintiff's choice is also lower when a plaintiff chooses to bring suit in a foreign forum as opposed to his home jurisdiction, or where there is little to connect the chosen forum with the cause of action. *See Bd. of Trs., Sheet Metal Workers Nat. Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1256 (E.D. Va. 1988) (hereinafter "*Baylor*").

Here, Plaintiff is a residence of Bristol, Pennsylvania, Compl. ¶8, which is located within the territorial jurisdiction of the Eastern District of Pennsylvania. That fact alone couples in favor of transfer. Separately, there is no connection to this district for *any* claims concerning the conduct of the above-mentioned federal prisons. Each prison is outside this district and involves personnel that are not located in this district. Thus, for the assault and battery claims arising out of the above-referenced facilities, this factor favors transfer.

**2. Parties' Convenience**. The parties' convenience factor "is chiefly operative in cases where the plaintiff chooses a forum away from (either party's) home," and is always a question of relative convenience. *Baylor*, 702 F. Supp. at 1259. Here, a transfer to anyone of the above districts would *convenience* Plaintiff as it is closer to his home venue, if not his home venue (E.D. Pa.). Moreover, as for the United States of America, the relevant BOP personnel (*i.e.*, the alleged tortfeasors) are not located in this District. This factor favors transfer and in fact, would convenience both parties.

**3. Witnesses' Convenience**. "The convenience of the witnesses is of considerable importance when considering a transfer, especially the convenience of non-party witnesses, whose location should be afforded greater weight in deciding a motion to transfer venue." *Fitzgibbon v. Radack*, 597 B.R. 836, 843 (E.D. Va. 2019) Moreover, the court may infer, "absent any contrary evidence from the non-

movant, that witnesses are located at or near the center of the allegedly [tortious] activities" are material to the case. *See SZ DJI Tech. Co. v. Bell Textron Inc.*, 2023 WL 6541848, at *6 (E.D. Va. Oct. 6, 2023) (Novak, J.) (quotation omitted). The federal personnel at the above facilities, whether supervisory or non-supervisory, who witnessed the relevant events in these claims are located at or near Lewisburg, PA (~197 miles away); Philadelphia, PA (~151 miles away); or Brooklyn, NY (~241 miles away). Traveling to and from this forum will be burdensome.

**4. Interests of Justice**. The interest of justice factor is "broad" and "is intended to encompass all those factors bearing on transfer that are unrelated to convenience of witnesses and parties." *Baylor*, 702 F. Supp. at 1260. Considering the totality of the circumstances of any claims that remain in the case, the interests of justice favor transfer. It provides closer access to the witnesses and discoverable information and will enable resolution of claims by courts with greater familiarity with Pennsylvania and New York common law. Accordingly, this factor and the others, counsel in favor of transfer.

## CONCLUSION

For all the foregoing reasons, the United States of America respectfully requests that all of Plaintiff's claims against the United States of America, save those claims in Count IV involving FDC Philadelphia, USP Lewisburg, and MDC Brooklyn. Should the Court conclude there are any plausible assault and battery claims caused by federal employees, the Court should transfer these specific claims to the appropriate district courts in Pennsylvania or New York.

//

//

//

Dated: September 8, 2026

Respectfully submitted,

TODD W. BLANCHE
Attorney General

THEOPHANI K. STAMOS
First Assistant United States Attorney

*By*: ____________/s/__________

DENNIS C. BARGHAAN, JR.
MATTHEW J. MEZGER
Assistant United States Attorneys
Office of the United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Ave.
Alexandria, VA 22314
Tel: (703) 299-3891/3741
Fax: (703) 299-3982
Email: dennis.barghaan@usdoj.gov
matthew.mezger@usdoj.gov

*Counsel for United States of America*