**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| RYAN SAMSEL,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA<br><br>Defendant. | No. 3:26-cv-530 (DJN) |

**MEMORANDUM OF LAW IN SUPPORT OF THE UNITED STATES OF AMERICA'S MOTION TO DISMISS**


TODD W. BLANCHE
Attorney General

THEOPHANI K. STAMOS
First Assistant United States Attorney

DENNIS C. BARGHAAN, JR.
MATTHEW J. MEZGER
Assistant United States Attorneys
Office of the United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Ave.
Alexandria, VA 22314
Tel: (703) 299-3891/3741
Fax: (703) 299-3982
Email: dennis.barghaan@usdoj.gov
matthew.mezger@usdoj.gov

*Counsel for United States of America*

## INTRODUCTION

With the benefit of the United States's first motion to dismiss, Plaintiff wholesale reinvents his Federal Tort Claims Act ("FTCA") claims. Among other creative pleading efforts, Plaintiff has abandoned theories of liability, deliberatively avoided mentioning the employer and identities of the alleged tortfeasors, and has strived to retreat from his binding admissions in the Original Complaint. The result of the amendments is, *inter alia*, as follows: a claim of malicious prosecution against a law enforcement officer instead of a federal prosecutor; seeking equitable tolling for time-barred claims based on reasons numerous courts have rejected; a negligence claims impermissibly predicated on violations of a USMS policy document and a federal contract; assault and battery claims with no mention of a federal employee's alleged involvement. The claims in the Amended Complaint are dismissible on jurisdictional or pleading grounds notwithstanding these creative pleading efforts.

To start, Plaintiff's malicious prosecution claim must be dismissed as he has not alleged that the government was without probable cause to bring the charges against him and he has not shown that the criminal proceedings terminated in his favor. Next, Plaintiff cannot sustain an abuse of process claims because his conclusory allegations reveal that the government used the legal system (*i.e.*, process) consistent with its functions and purpose. The court lacks subject matter jurisdiction over Plaintiff's false imprisonment claim because of the intentional tort proviso of the FTCA; namely, Plaintiff, is bound by his previous admissions that he seeks to hold the United States liable for the actions of an Assistant United States Attorney on this claim.

Changing gears to the claims involving his pre-trial detention. Many, if not most, of Plaintiff's claims are time-barred. Any negligence, intentional infliction of emotional distress ("IIED"), or assault and battery claim arising out of conduct that occurred before November 24, 2023 is untimely. The FTCA's strict statute of limitations provision required Plaintiff to present his claims within two years of the tortious conduct occurring and yet Plaintiff waited until November 24, 2025 to do so. Equitable

tolling of the statute of limitations is permitted in rare circumstances reserved where extraordinary circumstances stood in the way of Plaintiff completing the two page form (which he can later amend) within the permitted time. Plaintiff's reliance on the restrictions found in prison life, waiting on records, and learning the identities of his tortfeasors are insufficient to justify tolling the statute of limitations deadline here.

As to Plaintiff's negligence claim, that must be dismissed because the FTCA does not permit litigants to pursue claims for violations of federal law. Despite this prohibition, Plaintiff proceeds to build his claims based on the United States alleged failures to follow policy directives specific to the United States Marshals' Service ("USMS") and a contract between USMS and a local jail facility. Next, as to Plaintiff's IIED claims, they can be dismissed for failing to adduce sufficient allegations that the alleged tortious conduct is sufficiently outrageous to state for this highly disfavored tort. Lastly, Plaintiff's assault and battery claims can be dismissed as the Amended Complaint does not identity a single federal employee who allegedly assaulted Plaintiff.

In sum, the Court should grant the United States' motion and dismiss all of Plaintiff's claims.

## BACKGROUND

### I. FACTUAL BACKGROUND[1]

Plaintiff is a resident of the Commonwealth of Pennsylvania. *Compl.*, ¶8.[2] Plaintiff asserts state

[1]Unless otherwise stated, and consistent with the standard governing adjudication of motions to dismiss pursuant to Federal Rule 12(b)(6), *see Burnette v. Fahey*, 687 F.3d 171, 180 (4th Cir. 2012), all factual statements contained within this section are derived from the non-conclusory factual allegations found in Plaintiff's Amended Complaint. The inclusion of such factual allegations here should not be construed as the United States's concession that such allegations are true.

[2]As the Fourth Circuit has held, the mere fact that a Plaintiff has filed an amended complaint does not render the factual allegations contained in prior iterations of that complaint irrelevant:

> A party [] cannot advance one version of the facts in its pleadings, conclude that its interests would be better served by a different version, and amend its pleadings to incorporate that version, safe in the belief that the trier of fact will never learn of the change in stories.

*Tun-Cos v. Perrotte*, 922 F.3d 514, 527-28 (4th Cir. 2019) (citation omitted). This legal justification aside,

tort claims against the United States under the FTCA arising from the following: (1) his arrest, indictment, and conviction on criminal charges stemming from his acts at the United States Capitol; and (2) his pretrial detention on those same charges in a number of different facilities, primarily those operated either by the District of Columbia or regional consortiums of Virginia counties and cities.

### A. Arrest, Indictment, and Conviction

Plaintiff was present on the United States Capitol grounds on January 6, 2021, and based on allegations that he had engaged in violent conduct at that time, was arrested on various criminal charges on January 30, 2021. *Id.* ¶¶28-29. That arrest was premised upon a criminal complaint and accompanying statement of facts to which an FBI Special Agent attested. *First Am. Compl.* ("*FAC*"), ¶36; *see also United States v. Samsel*, No. 1:21cr537 (D.D.C.) (Dkt. No. 1).[3] Despite Plaintiff's focus on a single sentence, *FAC*, ¶¶38-39; 48-50, that statement of facts spanned over six (6) pages of single-spaced text, including *fifteen* (15) separate pictures. *Samsel*, No. 1:21cr537 (D.D.C.) (Dkt. No. 1-1). That statement first provided the very context conspicuously missing from plaintiff's amended complaint:

> On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020.
>
> . . . .

---

the use and consideration of plaintiff's original complaint is especially important (indeed, it is *necessary*) here, as Plaintiff's First Amended Complaint often contains no context for its allegations—*e.g.*, providing allegations regarding a particular incident without any introduction at all—and thus presumes that the reader will be considering these allegations *in pari materia* with those contained within the original complaint. As such, the instant discussion will draw from both complaints.

[3]It is well-settled that this Court may take judicial notice of materials contained on court dockets in adjudicating a motion to dismiss pursuant to Federal Rule 12(b)(6). *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004). And in any event, Plaintiff expressly cites to the Criminal Complaint (and accompanying Statement of Facts) in his most recent complaint in this action, which also makes it subject to review in this Federal Rule 12(b)(6) context. *See, e.g.*, *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015).

> At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

*Id.* at 1. The Statement of Facts then turned to Plaintiff's own specific conduct. Based specifically on "*video footage*" that the FBI Special Agent personally reviewed, early in the afternoon of January 6, 2026, "as preparations for the proceedings were underway in the House and Senate," Plaintiff became part of a "large crowd" that had gathered on the Capitol Grounds. *Id.* at 2. The Statement of Facts continued to explain that Plaintiff "approached a second line of [metal] barricades that were manned by uniformed U.S. Capitol Police Officers," "became confrontational" with one such officer," and along with "others in the crowd[,] pushed and pulled on the barricades." *Id.* at 3-4.

The Statement of Facts then detailed Samsel's specific actions in breaching the barricades:

> After removing his jacket, Samsel pushed and pulled the barricades until the crowd successfully pushed the barricades down on top of the officers. In the process of pushing the barricades to the ground, Samsel and others knocked over U.S. Capitol Police Officer (hereinafter Officer-1 "O-1") as the crowd lifted the barricades up and pushed toward the Capitol, causing O-1's head to hit the stairs behind her, resulting in a loss of consciousness. Samsel picked O-1 up off the ground and, according to O-1, said, "We don't have to hurt you, why are you standing in our way?"

*Id.* at 5. And from these facts, the criminal complaint asserted that there was probable cause to believe that Plaintiff had engaged in conduct violative of the following criminal statutes: (1) 18 U.S.C. § 111 (assault on a federal officer); (2) 18 U.S.C. § 231(a)(3) (obstruction of a law enforcement officer); and (3) 18 U.S.C. § 1512(c)(2) (obstruction of an official proceeding). *Id.* at 6-7.[4] Both the federal Magistrate Judge who issued the arrest warrant and a federal grand jury sitting in D.C. who subsequently returned an indictment against Plaintiff agreed. The grand jury charged him with several felony offenses—

---

[4]Each of these criminal offenses requires only *individual* action; *i.e.*, none of the crimes charged in the criminal complaint required collective action or intent.

including, *inter alia*, assault on a federal officer, *see* 18 U.S.C. § 111(a)(1), and physical violence on Capitol Grounds, *see* 40 U.S.C. § 5104—based on his conduct on January 6, 2021. *See Samsel*, No. 1:21cr537 (Dkt. No. 245). On February 2, 2024, after a bench trial, the District Court found Plaintiff guilty on eight criminal counts: two counts of civil disorder, *see* 18 U.S.C. § 231(a)(3); one count of assault on a federal officer that inflicted bodily injury and/or used a deadly/dangerous weapon, *see id.* §§ 111(a)(1); (b); one count of disorderly conduct on the Capitol Grounds, *see* 40 U.S.C. § 5104(e)(2)(D); one count of physical violence on the Capitol Grounds, *see id.* § 5104(e)(2)(F); one count of obstruction of an official proceeding, *see* 18 U.S.C. § 1512(c)(2);[5] and two additional counts of assault on law enforcement officers, *see id.* §§ 111(a)(1) & (b). *See Samsel*, No. 1:21cr537 (D.D.C.) (Dkt. No. 337). The Court's verdict was subsequently augmented by detailed findings of fact and conclusions of law. *Id.*

Before the District Court sentenced Plaintiff, President Trump—after his inauguration on the afternoon of January 20, 2026—issued him (and the other individuals convicted of offenses related to the events at the United States Capitol on January 6, 2021) a pardon. *FAC*, ¶¶8; 61. The next day, the Plaintiff was released from custody. *Id.* ¶¶62-63; 154.

**B. Pretrial Detention**

After his initial arrest in Pennsylvania, Plaintiff was held at the Federal Detention Center-Philadelphia. *Compl.*, ¶33; *see also Samsel*, No. 1:21cr537 (Dkt. No. 14).

**1.** Plaintiff was then transferred to the District of Columbia Jail ("D.C. Jail"), which is operated

[5] The District Court convicted Plaintiff on the § 1512(c)(2) charge based on District of Columbia Circuit law at the time, which provided that "'the congressional certification of the Electoral College count is an 'official proceeding' for purposes of § 1512(c)(2)." *Samsel*, No. 1:21cr537 (Dkt. No. 345), at 40 (quoting *United States v. Fischer*, 64 F.4th 329, 342 (D.C. Cir. 2023)). After a split Supreme Court held that the statute only criminalized conduct that "impaired the availability or integrity for use in an official proceeding of records, documents, objects, or . . . other things *used* in the proceeding," as opposed the proceeding itself, *United States v. Fischer*, 603 U.S. 480, 498 (2024) (emphasis added), the District Court dismissed that count of the conviction on the United States' motion. *FAC*, ¶¶56-57.

by the District of Columbia government. *Compl.*, ¶¶33, 35; *see also Dep't of Corrections*, *available at* https://doc.dc.gov/page/correctional-facilities (visited Oct. 19, 2026). Plaintiff alleges that a group of D.C. Jail "guards" "led by Corporal Hayes" "brutally assaulted him" in a portion of the jail without cameras. *Id.* ¶37; *FAC*, ¶67. D.C. Jail medical officials provided treatment to Plaintiff, and then took Plaintiff Howard University Hospital in the District of Columbia for additional treatment. *FAC*, ¶¶69-71. Plaintiff alleges that unnamed "Defendants" (as there is only one Defendant here) failed to obtain further specialty medical care for him in the wake of the Howard University treatment. *Id.* ¶¶72-74.

**2.** Plaintiff was then transferred to the Rappahannock Regional Jail ("RRJ"), located in Stafford, Virginia, and operated by a consortium of the Counties of King George, Spotsylvania, and Stafford, and the City of Fredericksburg. *Compl.*, ¶40; *see Jail Authority Bd.*, *available at* https://rrj.state.va.us/jail-authority-board (visited Oct. 19, 2026). While detained there, Plaintiff averred that "RRJ correctional and medical officials denied [him] adequate medical care for his serious pre-existing vascular conditions and for the new injuries sustained in the D.C. Jail assault." *Compl.*, ¶42. But in his most recent complaint, Plaintiff *now* alleges that the USMS was aware of these medical needs through a District Court hearing on the subject, and failed to release medical records to assist in learning what treatment still needed to be provided. *FAC*, ¶¶89-92.

**3.** Plaintiff was thereafter transferred from RRJ to the Central Virginia Regional Jail ("CVRJ"), located in Orange, Virginia, and operated by a consortium of the Counties of Fluvanna, Greene, Louisa, Madison, and Orange. *Compl.*, ¶49; *see also About Us*, *available at* https://www.cvrj.org/about (visited Oct. 19, 2026). Plaintiff maintains that on September 15, 2021, "a team of CVRJ correctional officers [] entered [Plaintiff's] unit," proceeded to "shackle[ him] from behind while an extremely heavy-set guard sat on his back with a shield," after which "his head was slammed to the ground and then he was dropped on a set of steps." *Compl.*, ¶55. Plaintiff now alleges that "Defendants" (again unnamed) did not provide follow-up medical care for his pre-existing medical conditions or his assault-

related injuries, *FAC*, ¶¶100-01, and that certain USMS officials knew of these injuries, *id.* ¶103.

**4.** Plaintiff was then transferred to Northern Neck Regional Jail ("NNRJ"), located in Warsaw, Virginia, and operated by a consortium of the Counties of Northumberland, Richmond, Westmoreland, and Gloucester, and the Town of Warsaw. *Id.* ¶105; *see also Jail Board*, *available at* https://www.nnrj.state.va.us/about/jail-board/ (visited Sept. 8, 2026). Plaintiff alleges that there is no documentation that USMS officials complied with an agency "Policy Directive" by ensuring that NNRJ could "address" his medical condition. *Id.* ¶106. And while at NNRJ, Plaintiff alleges that NNRJ correctional officers "perpetrated a major beating" of him, *id.* ¶111, and that "Defendants" failed to provide specialty medical care in the wake of this incident. *Id.* ¶117.

**5.** Plaintiff was then transferred to three BOP federal facilities: FDC-Philadelphia; USP-Lewisburg; and Metropolitan Detention Center ("MDC")-Brooklyn. *Comp.* ¶¶74, 80; 84. But Plaintiff does not include any allegations regarding those facilities in his most recent complaint.[6]

## II. <u>PLAINTIFF'S CLAIMS</u>

Plaintiff asserts *six* FTCA causes of action, all against the United States. *FAC*, ¶¶156-85.[7]

***a.*** Plaintiff again presents three claims largely premised on his criminal proceedings and ultimate conviction for his actions on January 6, 2021. Plaintiff first asserts a claim (Count I) for malicious prosecution. *Id.* ¶¶157-66. In his initial complaint, Plaintiff challenged the factual findings of the presiding District Judge, *Compl.*, ¶¶96-101, the evidentiary demonstration made by federal prosecutors, *id.* ¶101, and maintained that these same "[p]rosecutors," *inter alia*, "fabricated convictions from

[6]And for this reason, the United States has eschewed any detailed discussion of any claim that might be presented based on previously-alleged events in those facilities and a request for a venue transfer to a federal judicial district in New York or Pennsylvania.

[7]Plaintiff still not named a single state or municipal entity responsible for operating the jails in which he was allegedly assaulted or denied medical treatment, or a single correctional officer who engaged in the assaultive behavior, as a party defendant to this civil action.

[Plaintiff's] history, relied on misdemeanors greater than ten years old, and falsely stated that he had an outstanding warrant," *Id.* ¶102. But *now*, Plaintiff largely focuses on one of the numerous criminal charges on which he was convicted, 18 U.S.C. § 1512. *FAC*, ¶¶55-57; 160-64.

Plaintiff also presents an abuse of process claim (Count II), which is premised on a conclusory allegation that federal law enforcement officers "used criminal process against" him "after its issuance for purposes and consequences not proper in the regular conduct of the proceeding." *Id.* ¶168. Additionally, Plaintiff asserts a claim for false imprisonment (Count VI), premised upon the fact that he was released from custody a single day *after* the issuance of the presidential pardon because of an erroneous statement that there remained an outstanding warrant against him. *Id.* ¶¶154; 183-84. Although Plaintiff's original complaint identified a federal prosecutor as the source of that statement, *Compl.*, ¶160, he now simply states that the source was a generic "federal employee," *FAC*, ¶154.

**b.** Plaintiff then asserts three claims based on the treatment that he received during his pre-trial detention in state and local facilities. *First*, Plaintiff presents a claim (Count III) for "negligence." *Id.* ¶¶171-74. Plaintiff alleges in this respect that "[f]ederal personnel" "breached their duties" under USMS Policy Directive 9.4, which prevented him from receiving certain medical records and resulting medical care. *Id. Second*, Plaintiff presents a claim for assault and battery, alleging – in conclusory fashion – that federal law enforcement officers "intentionally cause harmful or offensive conduct" with him. *Id.* ¶176. And *third*, Plaintiff asserts a claim of intentional infliction of emotional distress, based on the "cumulative conduct" alleged in the complaint. *Id.* ¶180.

Plaintiff seeks, *inter alia*, $17,980,000.00 in compensatory damages. *Id.* p.36.

## STANDARD OF REVIEW

A motion to dismiss for lack of jurisdiction under Rule 12(b)(1) may either attack the court's subject matter jurisdiction by asserting "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based," or may assert that the plaintiff cannot meet his burden of

establishing a jurisdictional basis for this suit. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). This Court "may consider evidence outside the pleadings" to determine whether subject matter jurisdiction exists. *In re KBR, Inc.*, 744 F.3d 326, 333 (4th Cir. 2014) (citation omitted).

A complaint must be dismissed if it fails to allege facts that state a plausible claim for relief rising "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For FTCA claims, "all elements of a meritorious claim are also jurisdictional," meaning that the failure to state a claim deprives the court of jurisdiction. *Brownback v. King*, 592 U.S. 209, 217 (2021).

## <u>ARGUMENT</u>

### I. PLAINTIFF CANNOT MAINTAIN A CLAIM FOR MALICIOUS PROSECUTION (Count I)

Plaintiff originally premised his malicious prosecution claim upon certain acts taken by the Assistant United States Attorneys who were responsible for prosecuting him. Plaintiff now has scuttled that entire theory, replacing it with two entirely new interlocking theories: (1) the use, in the original criminal complaint (and accompanying statement of facts), of a putatively false quote from the USCP officer that plaintiff assaulted on January 6, 2021; and (2) the Supreme Court's *sui generis* construction of 18 U.S.C. § 1512 to exclude mere interference with congressional proceedings. It is unclear whether the newest iteration of Plaintiff's malicious prosecution claim seeks relief with respect to the entirety of the charges brought against him or only with respect to the § 1512 charge; in an abundance of caution, this memorandum addresses both potential interpretations. *Compare FAC*, ¶161 (pleading the malicious prosecution claim solely with respect to the § 1512 charge) *with id.*, ¶163 (discussing "the remaining affected charges"). Regardless of how this confusion is resolved, Plaintiff still has not stated a plausible malicious prosecution claim.

Through the FTCA, Congress provided for a limited waiver of the United States's sovereign

immunity for personal-injury claims "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Because Plaintiff's prosecution occurred within the District of Columbia, and the prosecutorial acts that are the subject of that claim similarly were based there, it is D.C. common law that governs the malicious prosecution claim. *See, e.g.*, *Richards v. United States*, 369 U.S. 1, 9-10 & n.20 (1962); *Flynn v. United States*, 2024 WL 5057537, at *6 (M.D. Fla. Dec. 10, 2024).

Under D.C. law, "four elements make up the tort of malicious prosecution: (1) the defendant's initiation or procurement of a criminal proceeding against the plaintiff; (2) absence of probable cause for the proceeding; (3) malicious intent on the part of the defendant; and (4) termination of the proceeding in favor of the plaintiff." *Moore*, 213 F.3d at 710. Plaintiff's new complaint fails to plead sufficient factual allegations that would render plausible at least two of these elements – the absence of probable cause and the termination of the prosecution in his favor.

### A. Plaintiff Has Not Plausibly Pled that the United States Lacked Probable Cause to Bring Criminal Charges Against Him

Plaintiff still has not pled sufficient facts that the United States lacked probable cause to bring criminal charges against him—whether generally or under § 1512—based on his conduct on January 6, 2021. One "need not be certain of the outcome of a proceeding to have reasonable grounds for instituting it." *Ammerman v. Newman*, 384 A.2d 637, 640 (D.C. 1978). The District's Court of Appeals defines probable cause as "the existence of facts and circumstances as will warrant a cautious man in the belief that his action and the means taken in prosecuting it are legally just and proper." *Katz v. District of Columbia*, 285 A.3d 1289, 1311 (D.C. 2022) (internal quotations and citation omitted).

**1.** Although Plaintiff's initial complaint cursorily averred that there was a lack of probable cause to bring charges against him, *Compl.*, ¶93, Plaintiff's new complaint does not contain *any* allegation—

conclusory or otherwise—that there was a lack of probable cause to charge him criminally *at all* (*i.e.*, on any charge). Nor could he, as the detailed findings of fact and conclusions of law issued by the presiding District Judge following Plaintiff's bench trial, *see Samsel*, 1:21cr537 (Dkt. No. 345), demonstrate there was a "reasonable basis" to bring the criminal prosecution.[8]

**2.** And thus, Plaintiff ostensibly trains the new version of his malicious prosecution claim almost exclusively on the charge that plaintiff (and his co-conspirators) violated § 1512(c)(2):

> [A]ttempted to, and did, corruptly obstruct, influence, and impede an official proceeding . . . a proceeding before Congress; specifically, Congress's certification of the Electoral College vote.

*Id.* (Dkt. No. 245). Not only did the presiding Magistrate Judge conclude that there was probable cause to issue a warrant for Plaintiff's arrest on this basis, *id.* (Dkt. No. 1), but the District Judge expressly convicted Plaintiff on this charge after trial, *id.* (Dkt. No. 345). Nevertheless, months after Plaintiff's conviction (and years after his arrest), the Supreme Court—in a statutory construction question of first impression for it—ultimately concluded that § 1512's reach only extended to the impairment of records or documents to be *used* in an official proceeding, not conduct that impairs the official proceeding itself. *FAC*, ¶56; *see also Fischer v. United States*, 603 U.S. 480 (2024). Although Plaintiff does allege that there was a lack of probable cause to charge him with a violation of § 1512, *FAC*, ¶161, it is unclear whether that averment is based on the *legal* question of how § 1512 is properly construed, the *factual* circumstances surrounding plaintiff's conduct, or both.

**a.** Take the legal question first. As the Supreme Court has held, "reasonable mistakes of law, like those of fact," do not preclude a finding of probable cause. *Heien v. North Carolina*, 574 U.S. 54, 61-62 (2014); *see also Cahaly v. LaRosa*, 796 F.3d 399, 408 (4th Cir. 2015) (holding that "officers may have

[8]Indeed, courts have held that a criminal conviction at trial is sufficient, in and of itself, to preclude any finding that the underlying prosecution lacked "probable cause" for purposes of a malicious prosecution claim. *See Brewster v. Woodward & Lothrop, Inc.*, 530 F.2d 1016, 1017 (D.C. Cir. 1976) (per curiam) (applying Virginia malicious prosecution law).

probable cause to arrest based on 'reasonable mistakes of law'" (quoting *Heien*, 574 U.S. at 62), *abrogated on other grounds by Reed v. Town of Gilbert,* 576 U.S. 155 (2015). Indeed, "[w]hether the facts turn out to be not what was thought, *or the law turns out to be not what was thought*, the result is the same" – so long as the mistake of law was "reasonable," probable cause remains. *Heien*, 574 U.S. at 61 (emphasis added); *see also Meyler v. Mayor & City Council*, 736 F. Supp. 3d 272, 285 (D. Md. 2024), *aff'd*, 2025 WL 3260487 (4th Cir. Nov. 20, 2025). That minimal burden is easily met here – one cannot conclude that an interpretation of § 1512's statutory language to encompass conduct to impede the congressional certification proceeding was not at the least "objectively reasonable" when the presiding federal Magistrate Judge, presiding federal District Judge, a panel of the D.C. Circuit, and three Associate Justices of the Supreme Court *all* concluded as much. The mere fact that a Supreme Court majority held differently—that "the law turn[ed] out to be not what was thought"—is irrelevant.

**b.** Plaintiff fares no better when approaching the issue from a factual angle. In this respect, Plaintiff focuses sharply on what he terms evidence of "collective and corrupt intent," *FAC*, ¶50; although this is also unclear, when read in tandem with Plaintiff's concentration on the § 1512 charge, is presumably a reference to evidence that his intent (like those in the crowd amassed at the Capitol that day) was to impede the congressional proceeding. And here, Plaintiff challenges the use of a single sentence from the original criminal complaint (and accompanying statement of facts) containing a quotation attributed to the Capitol Police officer that he assaulted—which Plaintiff maintains is false. *Id.* ¶38 ("We don't have to hurt you, why are you standing in our way?"); *see also id.* ¶47.

At the outset, the question for malicious prosecution purposes is not whether there was probable cause to *arrest* Plaintiff on a particular charge initially, but whether there was probable cause to support the criminal *proceeding* as a whole. *See Moore*, 213 F.3d at 710 (identifying the "initiation" of a proceeding and "probable cause" for a proceeding as separate elements of the malicious prosecution tort). And as the presiding District Judge found in convicting Plaintiff, there was evidence—sufficient

to satisfy not just "probable cause," but the "beyond a reasonable doubt" standard as well—regarding both Plaintiff's intent and the collective intent of the crowd that gathered, and ultimately entered, the Capitol. *See Samsel*, 1:21cr537 (Dkt. No. 345, at 35-37) ("Starting with [Plaintiff], the Court concludes beyond a reasonable doubt that he came to the Capitol on January 6th to disrupt Congress and, specifically, the certification of the 2020 election.").

Nor is the result different if Plaintiff could focus solely on the criminal complaint and its associated statement of facts. Plaintiff's specific allegation about the statement of facts—and his reference to "corrected-affidavit analysis"—is a reference to *Franks v. Delaware*, 438 U.S. 154 (1978). In *Franks*, the Supreme Court held that a law enforcement officer contravenes the Fourth Amendment if the affidavit that he or she presents to a Magistrate Judge in support of a warrant application contains "an intentionally or recklessly false statement that was necessary to the finding of probable cause at the time the warrant was issued." *United States v. Friedemann*, 210 F.3d 227, 229 (4th Cir. 2000) (emphasis omitted); *see also Franks*, 438 U.S. at 171-72. In other words, if probable cause existed to engage in the search notwithstanding the officer's false statement, the mere fact that the officer presented a misrepresentation to the magistrate is insufficient to vitiate a finding of probable cause. *See, e.g., Wilkes v. Young*, 28 F.3d 1362, 1365 (4th Cir. 1994).

As explained above, Plaintiff maintains that the quotation attributed to the Capitol Police Officer he assaulted—"We don't have to hurt you, why are you standing in our way?"—is false, and without it, there is no probable cause of "collective or corrupt intent." *FAC*, ¶50.[9] But this position is belied by even a cursory review of the statement of facts itself:

> As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place

[9]Somewhat ironically, in his original complaint, Plaintiff pointed to this very sequence of events as evidence of lack of criminal intent. *Compl.*, ¶100 ("Contemporaneous CCTV and the FBI Complaint acknowledged that [Plaintiff] picked [the officer] up off the ground.").

> around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.
>
> At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

*Samsel*, 1:21cr537 (Dkt. No. 1-1, at 1). Plaintiff was one of the "individuals in the crowd"—even without the statement from the Capitol Police officer about what Plaintiff said to her after the assault, there is probable cause in this Statement of Facts to conclude that Plaintiff's intent was, as with others in the crowd, to at least *impede* the congressional proceeding.

### B. Plaintiff Has Not Pled that the *Proceeding* Was Terminated in His Favor

Plaintiff also has not pled sufficient facts to demonstrate that the criminal proceeding was terminated in his favor. *See Morowitz v. Marvel*, 423 A.2d 196, 198 (D.C. 1980). Courts have held that for purpose of a malicious prosecution claim under District of Columbia law, the termination of the criminal proceeding must be "of such a nature as to indicate the innocence of the accused" and "reflect on the merits of the underlying action." *Brown v. Carr*, 503 A.2d 1241, 1245 (D.C. 1986) (citation omitted); *Rauh v. Coyne*, 744 F. Supp. 1186, 1193 (D.D.C. 1990) ("To show a termination in one's favor, the plaintiff must prove that a court passed on the merits of the charge against him in such circumstances as to show plaintiff's innocence"). More pointedly, "[i]t is not enough that the terminations are *consistent* with innocence; they must *tend to show* innocence." *O'Quinn v. District of Columbia*, 1988 WL 23244, at *2 (D.D.C. Mar. 4, 1988); *see also Chen v. ICS Protective Servs.*, 2024 WL 4103700, at *5 (D.D.C. Sept. 5, 2024).

Plaintiff now presents two separate arguments on this element of the malicious prosecution framework. *First*, as before, Plaintiff's alleges that President Trump issued him a pardon. *FAC*, ¶61. But the Supreme Court has explained that a pardon "carries an imputation of guilt" and the

"acceptance [of a pardon] a confession of it." *Burdick v. United States*, 236 U.S. 79, 94 (1915). The D.C. Circuit has also acknowledged that "acceptance of a pardon"—including, as here, a full and unconditional pardon—"may imply a confession of guilt." *United States v. Schaffer*, 240 F.3d 35, 38 (D.C. Cir. 2001); *see also Pres. Proclamation 10,887*, *available at* 2025 WLNR 4043532 (Jan. 20, 2025). This is especially so, *Schaffer* noted, when the pardon "act[ed] on the" pardoned individual's "conviction, without purporting to address [his] innocence or guilt." 240 F.3d at 38.

The Presidential Pardon received by Plaintiff did not at all indicate Plaintiff's innocence and thus it does not satisfy the favorable termination requirement for a malicious prosecution claim. *See Brown*, 503 A.2d at 1245; *see also In re North*, 62 F.3d 1434, 1437 (D.C. Cir. 1994) (holding that "a pardon does not blot out probable cause of guilt"); *Richards v. United States*, 192 F.2d 602, 607 (D.C. Cir. 1951). None of the language within Plaintiff's pardon indicates any expression with respect to Plaintiff's guilt or innocence of the underlying criminal charges.[10]

*Second*, Plaintiff notes that in the wake of the Supreme Court's decision in *Fischer*, the District Court vacated his conviction on, and dismissed, the § 1512 count. *FAC*, ¶¶56-57; 162. To maintain a common law malicious prosecution claim under D.C. law, however, it is the "proceeding" that must be terminated in an individual's favor, not just a single "count" within that "proceeding." *See Moore*, 213 F.3d at 710. And as other courts have held under similar state common law rubrics, the mere dismissal (or acquittal) on a single count of a criminal indictment does not equate to a favorable resolution of the entire proceeding. *See Kossler v. Crisanti*, 564 F.3d 181, 188 (3d Cir. 2009) (en banc) (holding that "the favorable termination of some but not all individual charges does not necessarily establish the favorable termination of the proceeding as a whole"), *abrogated on other grounds by Thompson*

---

[10]In his most recent complaint, Plaintiff adds allegations about statements that President Trump made after he completed his first term in office. *FAC*, ¶¶58-59. But none of these statements—even if they could be used to counteract the express language of the pardon itself—speak to Plaintiff's innocence of the charges for which he was convicted. *Id.*

*v. Clark*, 596 U.S. 36 (2022). Put differently, a court must analyze the "underlying conduct" that the various "charges sought to punish," and if the individual remains convicted of criminal charges that stem from the "same criminal conduct," there is no "favorable termination" of the proceeding. *See id.*

The application of this standard to the instant circumstances provides Plaintiff with no assistance. Initially, from his breaching of the barricades to his assault of the Capitol Police officer, the underlying conduct that the entirety of his criminal charges "sought to punish," and for which he remained convicted (before his presidential pardon), was the "same criminal conduct" on which the § 1512 charge was premised. And even more granularly, the presiding District Judge *also* convicted Plaintiff of "disorderly and disruptive conduct with the Capitol grounds," in violation of 40 U.S.C. § 5104, based on the same conduct and the same intent, as was the premise of the § 1512 charge:

> The evidence is overwhelming that Ms. Samsel, Mr. Grant, and Mr. Johnson engaged in disorderly and disruptive conduct on January 6th. The court has already recounted much of it. Their disorderly conduct includes knocking down barricades, assaulting officers, and refusing to leave the grounds as ordered. Mr. Samsel, Mr. Grant, and Mr. Johnson went on to commit other acts that the Court concludes disturbed the peace, undermined public safety, and disturbed the normal course of a process. . . .
>
> The Court finds beyond a reasonable doubt that Mr. Samsel, Mr. Grant, and Mr. Johnson intended to impede, disrupt, or disturb a session of Congress, specifically the joint session to certify the electoral vote.

*Samsel*, 1:21cr537 (Dkt. No. 345, at 34-36). In short, "when the offenses charged aim to punish the same misconduct, a simultaneous acquittal and conviction on related charges may not amount to favorable termination." *Kossler*, 564 F.3d at 191.

## II. PLAINTIFF CANNOT MAINTAIN A CLAIM FOR ABUSE OF PROCESS (Count II)

As with his other claims, Plaintiff's abuse of process claim has undergone a dramatic transformation. The abuse of process claim contained within Plaintiff's original complaint was largely premised on alleged violations of the constitutional right to counsel largely occasioned by alleged conduct on the part of Assistant United States Attorneys. *Compl.*, ¶¶111-126. Plaintiff's most recent

complaint provides a largely conclusory allegation to explain his abuse of process claim:

> [Special Agent] Curcio . . . used criminal process against Plaintiff after its issuance for purposes and consequences not proper in the regular conduct of the proceeding, including maintenance of the challenge attribution and materially incomplete narrative after their defects were or should have been known.

*FAC*, ¶168. In short, although not exactly clear, Plaintiff maintains that he can sustain an abuse of process claim based on his challenges to the criminal complaint (and associated statement of facts) simply because the United States used it during further proceedings during his criminal action. That is not common law abuse of process.

The general nature of an abuse of process claim does not largely differ amongst the various possible jurisdictions at issue here. Of premier importance, though, the court of last resort in the District of Columbia has provided as follows:

> The tort of abuse of process "lies where the legal system has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do *some collateral thing* which he could not legally and be required to do."

*Wood v. Neuman*, 979 A.2d 64, 76-77 (D.C. 2009) (quoting *Bown v. Hamilton*, 601 A.2d 1074, 1079 (D.C. 1992) (emphasis added)); *see also Donohoe Constr. Co. v. Mount Vernon Assocs.*, 369 S.E.2d 857, 862 (Va. 1988) (citing, *e.g.*, *Mullins v. Sanders*, 54 S.E.2d 116, 121 (Va. 1949)) (similar); *Lerner v. Lerner*, 954 A.2d 1229, 1238 (Pa. Super. 2008) (similar). In short, the *sine qua non* of abuse of process is "the misuse of process . . . for any purpose other than that which it was designed to accomplish." *Lerner*, 954 A.2d at 1238 (quoting *Shiner v. Moriarity*, 706 A.2d 1228, 1236 (Pa. Super. 1998)); *Scott v. District of Columbia*, 101 F.3d 748, 755 (D.C. Cir. 1997); *Donohoe Const.*, 369 S.E.2d at 862.

Plaintiff's new allegations in this regard do not satisfy these elements of the common law tort. "The 'process' here is" Plaintiff's criminal prosecution, "and the tort is made out only if" that criminal prosecution is "misused" for some other purpose outside of that prosecution. *Moore*, 213 F.3d at 713. As an example, "where a defendant has criminal warrants issued against plaintiff, then makes a separate

offer to have the warrants dismissed in return for payment of an unrelated debt, abuse of process has occurred." *Vodrey v. Golden*, 864 F.2d 28, 31 (4th Cir. 1988). But here, Plaintiff alleges simply that the individuals in question utilized the criminal complaint (and associated statement of facts) further in the *very criminal proceedings* in which it was filed. Continuing with further proceedings as a part of the exact same "process"—here, the criminal prosecution—is the antithesis of the requirement that the "process" be used for some *other* purpose. Even if Plaintiff could insist on a higher level of granularity —*i.e.*, equating the relevant "process" with solely the criminal complaint—judicial officers *typically* utilize criminal complaints (along with their associated statements of fact and other information) in making decisions about whether to continue a criminal defendant's pre-trial detention as a criminal action progresses. This Court should dismiss the claim for failure to state a plausible claim.

## III. ALL CLAIMS INVOLVING ACTS OR OMISSIONS PRE-DATING NOVEMBER 24, 2023 ARE BARRED BY THE FTCA'S STATUTE OF LIMITATIONS

Under the FTCA, "[a] tort claim against the United States shall be forever barred unless it is presented [to the agency] within two years after such claim accrues." 28 U.S.C. § 2401(b); *United States v. Wong*, 575 U.S. 402, 410-11 (2015); *Raplee v. United States*, 842 F.3d 328, 332-33 (4th Cir. 2016).[11] Plaintiff's own pleading indicates that he presented his SF-95 (*i.e.*, his tort claims against the United States) on November 24, 2025. *FAC*, ¶32. Thus, by his own admission, any claim that accrued before November 24, 2023 is time-barred (*i.e.*, everything between arrest through November 2023). This accordingly requires dismissal of all of Plaintiff's negligence claims, assault and battery claims, and most of Plaintiff's intentional infliction of emotional distress claims. *FAC*, ¶¶67-153.

Though Plaintiff tries to plead facts to justify equitable tolling (*FAC*, ¶¶19-34), the alleged

[11] To be sure, the statute of limitations is an affirmative defense that must be ordinarily raised in a responsive pleading. Fed. R. Civ. P. 8(c)(1). Even so, a district court may rule on an affirmative defense in a motion to dismiss under Rule 12(b)(6) "where facts sufficient to rule on an affirmative defense are alleged in the complaint," *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc), or by "tak[ing] judicial notice of facts from a prior judicial proceeding when [an issue preclusion] defense raises no disputed issue of fact," *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000).

bases he provides do not pass scrutiny. The FTCA's two-year presentment deadline is not a "jurisdictional" requirement, but is a deadline that is subject to equitable tolling. *Wong*, 575 U.S. at 421. Equitably tolling is available "in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the deadline to pass." *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990). Importantly, "the principles of equitably tolling described above do not exit to what is at best a garden variety claim of excusable neglect." *Id.* Rather, Plaintiff must show that: "(1) the [the claimant] has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in [the claimant's] way." *Cutter-Johnson v. United States*, 242 F. Supp. 3d 477, 483 (S.D. W. Va. 2017) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Plaintiff cannot meet this burden as case law forecloses many of Plaintiff's cited reasons for the delay in bringing his claim.

To start, Plaintiff asserts that "[s]olitary confinement for a vast majority of confinement should alone suffice to show an inability to focus and file complex FTCA" is reason enough to excuse the delay. *FAC*, ¶23. This alleged fact, coupled with the "repeated transfers," *FAC*, ¶22, are not enough to justify a tolling of the mandatory deadline for over two years. "[T]ransfers between prison facilities, solitary confinement, lockdowns, restricted access to the law library and an inability to secure court documents do not qualify as extraordinary circumstances." *Allen v. Johnson*, 602 F. Supp. 2d 724, 727-28 & n.7 (E.D. Va. 2009) (citation omitted); *see also Jones v. Clarke*, 2023 WL 6155277, at *4 (E.D. Va. July 7, 2023). The reason for such a rule is that prisoners, who are "familiar with the routine restrictions of prison life[,] must take such matters into account when calculating when to file" a claim. *See Allen*, 602 F. Supp. 2d at 728 (citation omitted). To the extent that ordinary incidents of prison life allegedly prevent a timely submission, the claimant must adduce facts with sufficient "specificity" to show those incidents caused the delay. *Booker v. Clarke*, 2022 WL 464554, at (E.D. Va. Feb. 15, 2022) (Novak, J.) (citation omitting). Plaintiff did not plead any factual particulars in his Amended Complaint to meet

this burden. Despite the lack of any specific factual particulars regarding how the logistics regarding his transfers and solitary confinement, Plaintiff's allegations actually *reveal* that he was able to carry out legal casework—electing to give priority to his criminal defense. *FAC*, ¶22; *see also FAC*, ¶27 (alleged that he "pursu[ed] medical and detention relief through counsel and [sought] judicial intervention concerning his medical care and safety").

Given that he could aid his counsel with the assistance of his defense and work with his defense to obtain different medical relief and detention, Plaintiff had the means to complete the *two*-page form required for any tort claim—especially when that form seeks information already within the claimant's knowledge, possession, and control. *See* Standard Form 95, Claim for Damage, Injury, or Death, https://www.gsa.gov/system/files/SF95-07a.pdf (last accessed Oct. 19, 2026). After all, the law only required Plaintiff to present to the relevant agency "written notification of an incident" and a "sum certain" amount of damages. 28 C.F.R. § 14.2(a); *accord Kokotis v. U.S. Postal Serv.*, 223 F.3d 275, 278 (4th Cir. 2000). He could have done this any time after learning of his injuries. *See Gould v. U.S. Dep't of Health & Hum. Servs.*, 905 F.2d 738, 744 (4th Cir. 1990) (en banc) ("[O]nce a prospective plaintiff learns of his injury, he is on notice that there may have been an invasion of his legal rights and that he should investigate whether another may be liable to him.") And if the facts changed as Plaintiff investigated the source of his injuries, he could amend. 28 C.F.R. § 14.2(a); 28 U.S.C. 2675(c). Stated differently, timely preserving his rights to pursue his claim does *not* prejudice his ability to amend the claim to include any new treatment or damages. Thus, there is no basis to wait for all the facts to develop for a particular claim, when the law already permits a means for amendment.

Plaintiff also alleges that the untimely SF-95 is understandable given that Plaintiff needed to gather information to "identify responsible federal employees," his medical records, "distinguish direct federal conduct from contractor conduct," among other information gathering tasks. *FAC*, ¶25. To start, waiting on the arrival of medical records (or any records) is not basis to toll the FTCA's deadline.

*Anderson v. United States*, 2024 WL 871381, at *3 (W.D.N.C. Feb. 29, 2024) ("If sluggish responses to records requests justified equitable tolling, the FTCA's statute of limitations would be the exception, not the rule. That cannot be."). Nor is there a basis to toll the deadline based on the need to learn the tortfeasor or appreciate whether the potential tortfeasor is a federal actor when there is no assertion that the federal government obstructed Plaintiff from obtaining this information. *Gould*, 905 F.2d at 746. There are simply no allegations to suggest that Plaintiff made a diligent inquiry about the tortfeasor's employment status and that the federal government withheld such information. Nor it likely that Plaintiff could make such allegations because he knew that certain detention facilities were contractors. *Samsel,* 1:21cr537 (Dkt. No. 39, at 15) (D.D.C. July 8, 2021) (statement of Plaintiff: "But would they be opposed, the government, to let me go to a federal prison, not a *contracted* facility. You know, a lot of these small counties and FDCs are just *contracted* temporarily, you know, for people I think." (emphases added)). The fact that Plaintiff also did not retain civil counsel until 2025 is also of no moment. *Toliver v. USP Lee*, 2020 WL 5027137, at *5 (W.D. Va. Aug. 25, 2020).

In sum, Plaintiff has not alleged sufficient facts to establish a plausible basis for equitable tolling. Assuming arguendo that his time in federal custody merits some tolling of the deadline, tolling is not appropriate for the 10-month period between when Plaintiff was released and the time of his claim. There are no facts to show any indicia of diligence to pursue his claims between January 2025 and June 2025 (*i.e.*, time of retaining counsel). *FAC*, ¶30. Instead, his allegations show that he elected to pursue other matters unrelated to the pursuit of any claims that accrued between January 29, 2021 and November 24, 2023. The same is true for the additional five months that it took Plaintiff's counsel to pursue the administrative claim between June 2025 and November 24, 2025. *FAC*, ¶32. There are no facts to show why all that time was required to present his claims. Accordingly, any and all claims pre-dating November 24, 2023 should be dismissed with prejudice.

## IV. THIS COURT LACKS JURISDICTION OVER PLAINTIFF'S FALSE IMPRISONMENT CLAIM (Count VII)

Plaintiff's false imprisonment claim remains barred by the FTCA's intentional torts exception in 28 U.S.C. § 2680(h). The original complaint explicitly premised the false imprisonment claim upon Plaintiff's allegation that an Assistant United States Attorney erroneously identified an outstanding warrant, which delayed his release by one day. *Compl.*, ¶¶160-61. Because a prosecutor is not a law enforcement officer, the intentional tort exception, *see* 28 U.S.C. § 2680(h), retains the United States' sovereign immunity over Plaintiff's false imprisonment claim. *MTD Mem.* (Dkt. 14), at 9-10; 17.

Plaintiff's amended complaint makes a single change—in the place of the explicit allegation that his release from custody was delayed by a single day as a result of the *Assistant United States Attorney's* erroneous statement regarding the warrant's existence, Plaintiff alleges the following:

> After responsible custodial personnel received operative pardon and dismissal information, *a federal employee* communicated that an outstanding warrant prevented Plaintiff's release.

*FAC*, ¶154 (emphasis added). Plaintiff cannot escape dismissal simply by making his previous allegation vaguer. *See Tun-Cos*, 922 F.3d at 527-28 ("A party [] cannot advance one version of the facts in its pleadings, conclude that its interests would be better served by a different version, and amend its pleadings to incorporate that version[.]"); *see also Spassova-Nikolova v. Rollins*, 2026 WL 102841, at *7 (E.D. Va. Jan. 14, 2026).[12] This Court should dismiss plaintiff's false imprisonment claim.

## V. PLAINTIFF HAS NOT PLAUSIBLY STATED A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (Count VI)

Plaintiff's Amended Complaint contains an intentional infliction of emotional distress ("IIED") arising from his pre-trial detention. *FAC*, ¶¶179-181. Rather than delineate specific conduct by specific actors, Plaintiff makes some omnibus claim that all of the conduct he describes "including objectively unreasonable force, solitary confinement, confinement to a broom closet, sleep

[12]In a different way, simply alleging that a "federal employee" engaged in the purportedly-wrongful conduct does not push Plaintiff's "across the line from conceivable to plausible"; rather, it is "merely consistent" with potential liability, which falls short. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

deprivation, routine cancellation of appointments, misclassification as a sex offender, concealment or minimization of serious medical conditions, interruption of necessary care, and continued confine without lawful basis" *FAC*, ¶180. There are multiple pleading defects with Plaintiff's claim.

At the outset, Plaintiff does not identify the alleged tortfeasor(s). At no point in his Amended Complaint does he indicate who used unreasonable force, subjected him to solitary confinement, confined him to a broom closet, used a restraint chair, deprived him of sleep, routinely cancelled his appointments, or classified him as a sex offender. The United States is only liable for the conduct of its agents and employees—not those of state and local governments. *See Pornomo v. United States*, 814 F.3d 681, 687 (4th Cir. 2016); 28 U.S.C. § 1346(b)(1). That Plaintiff tellingly omits who caused the above-mentioned conduct, especially when they occur in facilities that are operated by and staffed by state governments does not make his claims conceivable. In fact, it underscores that Plaintiff is attempting to hold the United States liable for the conduct of its independent contractors. Indeed, Plaintiff freely admits that the erroneous classification of sex-offender was a "detention-facility" error that USMS personnel corrected. *FAC*, ¶96. However, there is no jurisdiction for such a claim. *See also Johnson v. United States*, 2006 WL 572312 (E.D. Va. Mar. 7, 2006) (holding that local jail used by USMS to house pretrial detainees is an independent contractor and United States cannot be held liable for the negligence of jail employees pursuant to the FTCA).

Considering that the only conduct involving federal employees based on the allegations concerns the routine cancellations of appointments, minimization of medical events, and interruption of care,[13] the United States undertakes its pleading analysis based on those facts. Whether applying Virginia, D.C., Pennsylvania, or New York law, Plaintiff's claims fall short.[14]

---

[13] The United States omits the portion of this IIED claims concerning the "continued confinement without lawful basis" as that is duplicative of Plaintiff's false imprisonment claim and the Court has no jurisdiction over that claim. *See supra* Part IV.

[14] The United States analyzes the claim under these four jurisdictions given that Plaintiff was housed

D.C. Claims:[15] Under D.C. law, an IIED claim requires: "(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Minch v. District of Columbia*, 952 A.2d 929, 940 (D.C. 2008) (citation omitted). Under District of Columbia law, "[t]he requirement of outrageousness is not an easy one to meet." *Drejza v. Vaccaro*, 650 A.2d 1308, 1312 (D.C. 1994). Here Plaintiff maintains that it was outrageous conduct for the United States to minimize the extent of his injuries and conditions. *FAC*, ¶72. But this is not enough under D.C. law. As analogous case law shows, a hospital evicting a patient from the premises and cancelling the patient's surgery is not enough to sustain an IIED claim. *Hill v. Medlantic Health Care Grp.*, 933 A.2d 314, 334 (D.C. 2007). If that is insufficient to state a claim, which prevented a patient from getting required health care, so too is Plaintiff's claim for the alleged D.C.-based conduct. Accordingly, the D.C. based aspects of Plaintiff's IIED claim should be dismissed.

Virginia Claims:[16] "The disfavored tort of intentional infliction of emotional distress requires conduct, resulting in severe emotional distress, that is 'so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Mason v. Sallyport Glob. Holdings, Inc.*, 987 F. Supp. 2d 707, 710 (E.D. Va. 2013) (quoting *Russo v. White*, 400 S.E.2d 160, 162 (Va. 1991)). "[T]he tort of intentional infliction of emotional distress is 'not favored' in the law[.]" *Supervalu, Inc. v. Johnson*, 666 S.E.2d 335, 370 (Va. 2008). Here, Plaintiff's IIED claim is deficient in two respects.

First, outrageousness. Plaintiff must allege sufficient facts to demonstrate that the defendant's alleged conduct is "beyond all possible bounds of decency, [regarded] as atrocious [and] utterly

---

in each.

[15] As Plaintiff previously represented that he was transferred out of D.C. in April 2021, the lone incident that occurred in D.C. is the alleged minimization of conditions and scheduling after care that resulted from a visit to Howard University Hospital. *FAC*, ¶72.

[16] Virginia law arguably covers most of Plaintiff's IIED claim as the events concerning Plaintiff's medical care (or deficiencies with said care) occurred in Virginia. *FAC*, ¶¶85-127.

intolerable in a civilized community." *Edwards v. Buxbaum*, No. 1:12cv72, 2012 WL 13047531, at *3 (E.D. Va. Oct. 19, 2012) (quoting *Russo*, 400 S.E.2d at 162) (alterations in original); *see also Williams v. Agency, Inc.*, 997 F. Supp. 2d 409, 414 (E.D. Va. 2014) (citing *Harris v. Kreutzer*, 624 S.E.2d 24, 33 (Va. 2006)); *see Doe v. Baker*, 857 S.E.2d 573, 589 (Va. 2021) (internal citations omitted) (in suit against church defendants, allegations that church knew of pastor's impropriety with women over three decades at the church, who then learned that the pastor sexually molested the minor plaintiff, chose only to send the pastor for counseling, were insufficient to establish outrageous conduct).

A review of Plaintiff's allegations show that he has not pled sufficient facts to show that the alleged conduct was sufficiently outrageous. As *Ogunde v. Prison Health Servs., Inc.*, 645 S.E.2d 520 (Va. 2007) illustrates, denying an inmate repeated treatment or refusing to exempt the inmate from a policy that allegedly aggravated his health conditions was insufficient to plead an actionable IIED claim under Virginia law. *Id.* at 526. Plaintiff's claims fit within this rubric. Another case, *Coppage v. Mann*, 906 F. Supp. 1025 (E.D. Va. 1995), is also analogous. There, Judge Ellis dismissed a plaintiff's IIED claim for failing to plead sufficient facts regarding the outrageousness of the conduct. Though *Coppage* observed that prison staff "may well have delayed in treating Coppage or misdiagnosed him," they still "provide[d] him with some level of care," and as such, these instances of "mere professional negligence [were] not sufficiently extreme and outrageous to give rise to this unfavored tort." Applying *Coppage* here, notwithstanding the faults Plaintiff assigns to the United States, there are many allegations from Plaintiff were the United States enabled Plaintiff's care or provided medical information to facilitate care. *See, e.g.*, *FAC*, ¶¶94, 105; *Samsel*, 1:21cr537, ECF No. 39 at 15, (D.D.C. July 8, 2021) (the Court stating: "The United States Marshal indicated that he had signed off on the neurovascular appointment, and that all appointments that were requested will be approved as long as, again, they are within policy."). Accordingly, the asserted acts that Plaintiff put at issue in his IIED claim do not rise to the sufficiently outrageous level required under Virginia law.

Second, emotional distress. It is Plaintiff's burden to plead sufficient facts to establish that "the distress inflicted is so severe that no reasonable person could be expected to endure it." *Russo*, 400 S.E.2d at 163 (dismissing claim where plaintiff pled the following symptoms: nervousness, sleeplessness, stress and its physical symptoms, withdrawal from normal activity, and lack of concentration at work); *Harris v. Kreutzer*, 624 S.E.2d 24, 34 (Va. 2006) (dismissing IIED for insufficient distress allegations were plaintiff pled that she "suffered severe psychological trauma and mental anguish"); *see also Zaklit v. Glob. Linguist Sols., LLC*, 53 F. Supp. 3d 835, 848 (E.D. Va. 2014).

Plaintiff's allegations that he experienced "severe emotional distress, including anxiety, panic, humiliation, trauma symptoms, sleep disruption, and continuing functional impairment," *FAC*, ¶181 are far too conclusory and akin the allegations in *Russo* and *Harris*.[17] The failure to adduce these required facts to sustain an IIED claim under Virginia law merits dismissal.

Pennsylvania claims:[18] The Supreme Court of Pennsylvania has "never expressly recognize[d] a cause of action for intentional inflection of emotional distress." *Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000). Given the rarity of such a claim, it not enough to show that "the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress[.]" *Hoy v. Angelone*, 720 A.2d 745, 753-54 (Pa. 1998). Moreover, an IIED claim "require[s] a physical injury," which Plaintiff does not plead. *Oldham v. Pa. State Univ.*, 138 F.4th 731, 758 (3d Cir. 2025); *Simmons v. Pacor, Inc.*, 674 A.2d 232, 238 (Pa. 1996). Though he alleges to suffer from "emotional

[17] It is true that the Fourth Circuit held that a plaintiff's conclusory allegations of "severe emotional distress and other injury" are enough to state an intentional infliction of emotional distress claim under Virginia law. *See Hatfill v. N.Y. Times Co.*, 416 F.3d 320, 337 (4th Cir. 2005). However, that holding stands on a perilous footing in light of new precedent from the United States Supreme Court and the Supreme Court of Virginia as other jurists in this District have noted. *See, e.g.*, *Fuller v. Aliff*, 990 F. Supp. 2d 576, 581 (E.D. Va. 2013) (Jackson, J.).

[18] Plaintiff's Amended Complaint appears to make no mention of the care (or lack thereof) that he received while detained in a facility located in Pennsylvania. The United States nevertheless includes this analysis in the event Plaintiff is permitted to amend again.

distress, including anxiety, panic, humiliation, trauma symptoms, sleep disruption, and continuing functional impairment," *Compl.*, ¶181, he does not allege facts to link those symptoms to any physical injury that occurred in Pennsylvania because of the outrageousness conduct (*i.e.*, prison conditions). Of course, the conclusory allegations that he does make cannot sustain a claim.

Separately, Plaintiff fails to plead sufficiently outrageous conduct under Pennsylvania law as evidenced by the analogous case law. *See e.g.*, *Vasquez v. Wingard*, 847 F. App'x 108, 110 (3d Cir. 2021) (affirming dismissal of IIED claim where prison complained that cellmate sexually assaulted him after complaining about roommate assignment; was not treated properly by prison psychologist; and experienced disparaging remarks form the guards); *Cook v. Condo*, 2021 WL 5585914, at *8 (M.D. Pa. Nov. 30, 2021) (dismissing IIED claim involving prison transfers); *Heath v. PDP Comm'r*, 2024 WL 2136287, at *1-2, *9 (E.D. Pa. May 10, 2024) (dismissing IIED claim based on unsafe living conditions where prisoner lacked hygiene care for 48 days; kept COVID-19 positive cellmate in cell; quarantined him for several days; and did not provide cleaning supplies).

<u>New York Claims</u>:[19] New York law requires IIED claim to involve conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Howell v. N.Y. Post Co.*, 612 N.E.2d 699, 702-03 (N.Y. 1993). That standard is especially high because every IIED claim considered by the New York Court of Appeals "has failed because the alleged conduct was not sufficiently outrageous." *Id.* at 702 (collecting cases).

Plaintiff's allegations fall short to state an IIED claim under New York law. Claims involving wrongful detention or unsanitary conditions do not rise to the level of an actionable IIED claim. *See*

[19] The few allegations concerning conduct in New York are found in ¶¶128-131. The allegations generally involve a failure of federal employees (MDC Brooklyn is a BOP facility) to provide adequate care and attention to Plaintiff. *FAC*, ¶131.

*Friedman v. Self Help Cmty. Servs., Inc.*, 647 F. App'x 44, 48 (2d Cir. 2016); *Sanusi v. Dep't of Homeland Sec.*, 2010 WL 10091023, at *18 (E.D.N.Y. Dec. 1, 2010) (dismissing IIED claim involving detention conditions that included "rotten food, urine-stained sheets, two days of wet bedding, lack of privacy, twenty-three hour confinement in cramped cells, and the discharge of plaintiff's personal belongings").

## VI. THIS COURT DOES NOT HAVE JURISDICTION OVER A NEGLIGENCE CLAIM PREDICATED ON THE VIOLATION OF FEDERAL POLICY OR FEDEARL CONTRACTS (Count III)

The United States' waiver of sovereign immunity under the FTCA is not a waiver that permits suits for any and all violations of statutes, or regulations. The waiver only extends to claims where the United States, "if a private person[] would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Plaintiff's negligence claim based the Unted States' alleged failure to comply with "[d]irective 9.4 and the applicable detention agreements," *FAC*, ¶172, fall short of what is required under the law for an FTCA claim.

As used in the FTCA, the "law of the place" refers to the "law of the State—the source of substantive liability under the FTCA." *FDIC v. Meyer*, 510 U.S. 471, 478 (1994). Accordingly, because of that language, "the FTCA does not waive the United States' immunity against liability for violation of its own statutes." *Williams*, 242 F.3d at 173; *see also Mattison v. United States*, 2021 WL 3861597, at *9 (E.D. Va. Aug. 30, 2021) ("The FTCA does not waive sovereign immunity for alleged violations of internal federal policies." (citing *Williams*, 242 F.3d at 173)). The FTCA "was not intended that the constitutionality of legislation, the legality of regulations, or the propriety of a discretionary administrative act should be tested through the medium of a damage suit for tort." *Pornomo*, 814 F.3d at 690 (citation omitted); *accord Welch v. United States*, 409 F.3d 646, 653 (4th Cir. 2005). Thus, "as made explicit by its text, the FTCA's limited waiver of sovereign immunity extends no farther than the limits of private tort liability." *Ready Trasp., Inc. v. Mil. Traff. Mgmt. Command*, 86 F. App'x 561, 565 (4th Cir. 2004); *Early v. U.S. Dep't of Hous. & Urban Dev.*, 2022 WL 2541915, at *5, *7-11 (E.D. Va. July 7, 2022).

Precedent is clear that Plaintiff cannot bring his regulatory claims against the United States through the FTCA. No private person of Virginia can invoke Virginia law to brings claims regarding violations of USMS Policy Directive 9.4 and any intragovernmental facility contracts. Yet that is what Plaintiff aims to do through his negligence claim as evidenced by the heading in the Amended Complaint entitled, "Directive 9.4 Breaches and Resulting Harm" and the allegations that fall under it. *FAC*, ¶¶132-155. All Plaintiff is permitted maintain a tort against the United States through the FTCA using Virginia law. Though Plaintiff may claim that this is what he is doing by bringing a negligence claim, there is no mistaking that he is trying to bring causes of action for the mere violations of USMS policy and intragovernmental agreements. *FAC*, ¶¶172-173.

Even if Plaintiff properly raised a claim of negligence, this claim separately fails because Plaintiff did not plead any duty owed to him by the United States. That is required for any negligence claim arising out of D.C. or Virginia law. *Lapp v. United States*, 706 F. Supp. 3d 568, 580 (E.D. Va. 2023); *Lewis v. United States*, 83 F. Supp. 3d 198, 209 (D.D.C. 2015). Here, Plaintiff tries to invoke a duty through reference to the USMS's policies and contracts to which he is not a party. Under D.C. and Virginia law neither can sustain a basis for a duty for a negligence claim actionable under the FTCA.

D.C. and Virginia law are clear on this point. "Violations of federal law—when not accompanied by any local law violation—cannot support a suit under the FTCA." *Horbeck Offshore Transp., LLC v. United States*, 569 F.3d 506, 508 (D.C. Cir. 2009); *Gutrejman v. United States*, 527 F. Supp. 3d 1, 8 (D.D.C. 2021). That is why it was imperative that Plaintiff demonstrate that "local tort law recognizes an analogous duty" to survive dismissal. *Lewis*, 83 F. Supp. 3d at 209. Plaintiff has not done this and instead intends to hold the United States liable for violations of a federal policy and a contract to which he is not a party without any state analog. Likewise, under Virgina law, the duty "must be a common law duty," "not one existing between the parties solely by virtue of . . . contract." *Augusta*

*Mut. Ins. Co. v. Mason*, 645 S.E.2d 290, 293 (Va. 2007); *Tinger v. Graystone Homes, Inc.*, 834 S.E.2d 244, 255 (Va. 2019). Plaintiff cannot point to any common law source for a duty borne from USMS policy.

Accordingly, Plaintiff's negligence claims must be dismissed as they are solely predicated on violations of a federal policy and federal contracts with no substantive basis in the laws of the states.

## VII. PLAINTIFF HAS NOT ALLEGED AN ASSAULT AND BATTERY BY ANY FEDERAL EMPLOYEE (Count IV)

There are no allegations involving an assault and battery by a federal employee in Plaintiff's Amended Complaint. Tellingly, Plaintiff's allegations reveal as much through his opaque and non-specific allegation: "Qualifying federal investigative or law-enforcement officers intentionally caused harmful or offensive contact with Plaintiff . . . during custodial incidents alleged above." *FAC* ¶176. Of course, that "formulaic recitation of the elements of a cause of action" will not rescue a claim from dismissal. *Barrett v. Pae Gov't Servs., Inc.*, 975 F.3d 416, 434 (4th Cir. 2020).

The Amended Complaint's allegations confirm that there are no other plausible assault and battery claims involving federal personnel. Indeed, the Amended Complaint only alleges two additional incidents of assault: (1) an assault in March 2021, *FAC*, ¶67; and (2) an assault in August 2023 that was caused by another inmate, *FAC*, ¶128. Plaintiff has not stated a plausible claim for relief against the United States under the FTCA for either incident as they do not involve a federal employee. Though Plaintiff relies on the passive voice to avoid identifying the relevant actor, his Original Complaint was clear that the March 2021 assault was caused by D.C. Jail staff. *Compl.*, ¶¶36-37. Plaintiff is bound by that admission. *Tun-Cos*, 922 F.3d at 527-28; *supra* n.2. As the United States has only waived its sovereign immunity for claims against federal employees acting within the scope of their employment, Plaintiff's assault and battery claim must be dismissed. *See Pornomo*, 814 F.3d at 687.

## <u>CONCLUSION</u>

For all these reasons, the United States respectfully requests that Plaintiff's claims be dismissed.

Dated: October 15, 2026

Respectfully submitted,

TODD W. BLANCHE
Attorney General

THEOPHANI K. STAMOS
First Assistant United States Attorney

*By*: ______/s/______

DENNIS C. BARGHAAN, JR.
MATTHEW J. MEZGER
Assistant United States Attorneys
Office of the United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Ave.
Alexandria, VA 22314
Tel: (703) 299-3891/3741
Fax: (703) 299-3982
Email: dennis.barghaan@usdoj.gov
matthew.mezger@usdoj.gov

*Counsel for United States of America*